Charles Buford STEWART,
Plaintiff-Appellant,

v.

Aileene LOVE, Warden, and Michael Dutton, Defendants-Appellees.

No. 81–5659.

United States Court of Appeals, Sixth Circuit.

Submitted on Briefs Nov. 30, 1982.

Decided Dec. 22, 1982.

Charles Buford Stewart, pro se.

William M. Leech, Jr., Atty. Gen. of Tenn., Jerry Smith, Asst. Atty. Gen., Nashville, Tenn., for defendants-appellees.

Before LIVELY, Circuit Judge, and PHILLIPS and BROWN, Senior Circuit Judges.

PER CURIAM.

Charles Buford Stewart, an inmate of the DeBerry Correctional Institute in the Tennessee prison system, filed this pro se action under 42 U.S.C. § 1983 against the associate warden of the prison and others, seeking $60,000,000.00 in damages for alleged violation of his constitutional right to be free from cruel and unusual punishment.

Chief District Judge L. Clure Morton granted Stewart's motion to proceed in forma pauperis. Thereafter, Judge Morton directed the federal public defender to take a videotaped "deposition" of Stewart, to supplement the facts averred in the complaint. A cassette of the videotaped "deposition" was filed as a part of the court record.

On July 30, 1981, Judge Morton filed a memorandum opinion and order dismissing the complaint. A copy of the opinion of the district court is made an appendix hereto.

On November 21, 1981, this court granted Stewart's motion to proceed on appeal in forma pauperis and ordered the federal public defender to prepare and file a transcript of the videotaped "deposition" as a part of the appellate record.

Reference is made to the memorandum opinion of the district court (appendix hereto) for a recitation of pertinent facts and issues.

We conclude that the decision of the district court to dismiss the complaint for lack of merit should be affirmed. The injuries to Stewart came about as a result of an assault by another inmate of the prison. The charges against the prison officials, construed in a light most favorable to

**44**

plaintiff, do not constitute gross negligence or deliberate indifference on the part of the officials to appellant's risk of injury. *See, e.g., Little v. Walker,* 552 F.2d 193 (7th Cir.1977); *Parker v. McKeithen,* 488 F.2d 553 (5th Cir.), *cert. denied,* 419 U.S. 838, 95 S.Ct. 67, 42 L.Ed.2d 65 (1974). In the context of prison cases involving assault by other inmates, mere negligence on the part of prison officials is not sufficient to give rise to culpability under the eighth amendment. *United States v. Twomey,* 479 F.2d 701, 721 (7th Cir.1973), *cert. denied,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974); *Williams v. Field,* 416 F.2d 483 (9th Cir. 1969), *cert. denied,* 397 U.S. 1016, 90 S.Ct. 1252, 25 L.Ed.2d 431 (1970). In the present case, the defendant prison officials transferred appellant from one unit (D–1–East) to another (D–3–West) for a period of six months, when informed of his fear that he was in need of protection. For the reasons stated in the opinion of the district court (appendix hereto), we hold that the district judge did not abuse his discretion in dismissing the action under 28 U.S.C. § 1915(d). See Annotation, "Standards for determining whether proceedings in forma pauperis are frivolous and thus subject to be dismissed under 28 U.S.C. § 1915(d)", 52 A.L.R. Fed. 679 (1981).

Accordingly, the judgment of the district court is affirmed.

### APPENDIX

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

CHARLES BUFORD STEWART

vs.                                                No. 80-3272

AILEENE LOVE, et al.

[Filed July 30, 1981]

### MEMORANDUM

The plaintiff in this action is an inmate in the custody of the Tennessee Department of Correction, incarcerated at DeBerry Correctional Institute. The complaint was filed pursuant to 42 U.S.C. § 1983, alleging a violation of the plaintiff's constitutional rights, specifically the right to be free of cruel and unusual punishment guaranteed by the 8th Amendment to the United States Constitution.

The pertinent facts supporting the plaintiff's claim, as set forth in the pleadings and as supplemented by the plaintiff's videotaped deposition taken by the Federal Public Defender at the direction of the court, can be stated as follows. While incarcerated at DeBerry, the plaintiff became concerned that another inmate or inmates were for some reason planning an attack on his life. The plaintiff believes that one or more letters were circulated among certain other inmates which established the existence of such a plot. However, the plaintiff himself has never seen any of the letters, but has merely learned of their existence by means of the prison grapevine. After the plaintiff began to fear for his own safety, he took his complaint to various prison officials and requested protection, naming particular inmates, including one Harold Griffin, as the potential attackers. It appears that although the unit counselors and other officials who became involved in the plaintiff's case as a result of his complaints generally did not believe that he was in any danger and told him not to worry, the decision was nevertheless made to transfer the plaintiff to another unit, D–1–East, from Unit D–3–West, where he and those he feared had all been housed. This transfer apparently occurred in May of 1979. The plaintiff remained in unit D–1–East until, by his account, about mid-October of 1979, as which time he was transferred back to unit D–3–West.

Following his return to D–3–West, the plaintiff again began to fear for his personal safety, and apparently again informed the unit counselor of that fear. The source of his renewed apprehension is unclear and is perhaps irrelevant, but seems to have had its genesis in the prison's rumor mill. The plaintiff stated in his deposition that during the two to three weeks following his return to D–3–West, he heard reports that someone was going to get hit on the head. These were the reports which the plaintiff apparently relayed to the unit counselor.

On or about November 6, 1979, the plaintiff was attacked by another inmate, al-

legedly Harold Griffin. The alleged weapon was an unsecured pool stick taken from the unit's recreation room. As a result of this attack, and of blows delivered to the plaintiff's head, he suffered injuries which required medical treatment and a period of hospitalization.

The gist of the present complaint is the failure of the prison officials to protect the plaintiff from this attack, in spite of the fact that the plaintiff asserts that he had repeatedly informed the prison officials that certain inmates were out to get him and had requested special protection. The plaintiff asks $60 million in damages.

In some circumstances, the failure to protect inmates from attack by fellow inmates may state a claim under either the 8th Amendment, *see Little v. Walker*, 552 F.2d 193 (7th Cir.1977); *Holt v. Sarver*, 442 F.2d 304 (8th Cir.1971), or the 14th Amendment, *Curtis v. Everette*, 489 F.2d 516 (3rd Cir. 1973). However, generally an isolated or occasional attack is not sufficient to state a claim. *Woodhous v. Commonwealth of Virginia*, 487 F.2d 889 (4th Cir.1973). In the present case, the incident of which the plaintiff complains is clearly a single, isolated incident. The court does not believe that a constitutional violation has occurred, even taking the facts as stated most favorably to the plaintiff.

Of course, the allegation that the plaintiff had informed the prison officials of an alleged plot to injure him does raise somewhat thorny questions. Had no action whatsoever been taken to protect the plaintiff, the court would be inclined to allow this action to proceed to a full hearing. However, the plaintiff admits that he was transferred to another unit following his complaints and was kept separated from the inmates whom he feared for several months. Then, following his transfer back to D–3–West, he has reported only the most general allegations, that "someone was going to get hit on the head." Furthermore, while the plaintiff asserts that letters were circulated threatening to harm or kill him, he has never seen any such letters and is apparently unable to produce them. Thus,

the prison officials were faced with unsupported allegations and were required to reach a professional judgment on the basis of the facts as they then appeared. In retrospect, that judgment appears to have been flawed, but the court concludes that any wrongdoing was mere negligence, and was not a violation of the plaintiff's rights under either the 8th or 14th Amendments.

An order will be entered dismissing the action.

/s/ L. CLURE MORTON
CHIEF JUDGE