**Michael SWARTS, Plaintiff,**

v.

**Perry JOHNSON, Director of the Michigan Department of Corrections; Richard Handlon, Warden at Michigan Training Unit; and Rudy Davidson, Defendants.**

**No. G83–1378CA6.**

United States District Court, W.D. Michigan, S.D.

Jan. 27, 1986.

Chambers, Steiner, Mazur, Ornstein & Amlin by Franklin J. Chambers, Kalamazoo, Mich., for plaintiff.

Frank J. Kelley Atty. Gen. by David G. Edick, Asst. Atty. Gen., Corrections Div., Lansing, Mich., for defendants.

## OPINION RE MOTION FOR SUMMARY JUDGMENT

HILLMAN, District Judge.

This matter is before the court on defendants Johnson's and Handlon's motion for summary judgment pursuant to Fed.R. Civ.P. 56. For the reasons stated below, defendants' motion is granted.

### FACTUAL BACKGROUND

At all relevant times, plaintiff Michael Swarts and defendant Rudy Davidson were incarcerated at the Michigan Training Unit ("MTU") in Ionia, Michigan, defendant Richard Handlon was the Warden at MTU, and defendant Perry Johnson was the Director of the Michigan Department of Corrections ("MDoC"). On November 27, 1980, plaintiff was assaulted by another MTU inmate, allegedly defendant Davidson, and sustained trauma to and loss of sight in the right eye.

Plaintiff filed suit under 42 U.S.C. § 1983, alleging that the acts and omissions of defendants Johnson and Handlon deprived him of his eighth amendment right to be free from cruel and unusual punishment. His complaint also asserts pendent state negligence claims against defendants Johnson and Handlon and a pendent state assault and battery claim against defendant Davidson. Defendant Davidson has apparently never been served.

The essence of plaintiff's federal claim against defendant Johnson is that he failed to promulgate appropriate rules to "avoid the foreseeable risk of harm to other inmates caused by unreasonably dangerous inmates" like Davidson; that this failure to promulgate rules was a proximate cause of plaintiff's injuries and constitutes cruel and unusual punishment. The essence of plaintiff's federal claim against defendant Handlon is that he knew or should have known that Davidson was violent, and his failure to remove Davidson from the general prison population constitutes cruel and unusual punishment and was a proximate cause of plaintiff's injuries.

Defendants Handlon and Johnson move for summary judgment on grounds that the facts establish only an isolated assault and no foreknowledge on their part of any threat or danger specific to plaintiff, facts insufficient to state an eighth amendment deprivation. Alternatively, defendants argue that qualified immunity and/or eleventh amendment immunity bar the claims against them. Additional facts necessary to resolve the motion will be presented in the body of the opinion.

## STANDARD OF REVIEW

On a motion for summary judgment, movant bears the burden of showing conclusively that no genuine issue of material fact exists. *Smith v. Hudson*, 600 F.2d 60 (6th Cir.), *cert dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979); *Tee-Pak, Inc. v. St. Regis Paper Co.*, 491 F.2d 1193 (6th Cir.1974); Fed.R.Civ.P. 56(a). In determining whether issues of fact exist, "the inferences to be drawn from the underlying facts contained in [the attached exhibits and depositions] must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). A court may not resolve disputed questions of fact in a summary judgment decision, and if a disputed question of fact remains, the district court should deny the motion, and proceed to

trial. *United States v. Articles of Device*, 527 F.2d 1008, 1011 (6th Cir.1976).

## DISCUSSION

### 1. *Section 1983 claim.*

Plaintiff's section 1983 claim against defendants Johnson and Handlon is that they, acting under color of state law, subjected him to cruel and unusual punishment in violation of the eighth amendment by exposing him to an unreasonable risk of assault from other inmates.

■ Mere negligence on the part of prison officials is insufficient to establish such an eighth amendment violation. *Stewart v. Love*, 696 F.2d 43, 44 (6th Cir.1982). Plaintiff must instead show an unreasonable risk of injury and "acts or omissions [of prison officials] sufficiently harmful to evidence deliberate indifference" to plaintiff's physical wellbeing. *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). As noted in *Little v. Walker*, 552 F.2d 193, 198, n. 8 (7th Cir.1977), *cert. denied*, 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978), *citing Estelle, supra:*

"[w]hile mere inadvertence or negligence cannot support a Section 1983 action raising Eighth Amendment issues, deliberate indifference, '[r]egardless of how evidenced]—either by actual intent or recklessness—will provide a sufficient foundation."

Generally, "an isolated or occasional attack" is insufficient to state an eighth amendment violation, *Stewart, supra; Williams v. Fields*, 416 F.2d 483 (9th Cir.1969), *cert. denied*, 397 U.S. 1016, 90 S.Ct. 1252, 25 L.Ed.2d 431 (1970). As a general rule,

"... there must be a showing of either a pattern of indisputed and unchecked violence or, on a different level, of an egregious failure to provide security to a particular inmate, before a deprivation of constitutional right is stated."

*Penn v. Oliver*, 351 F.Supp. 1292, 1294 (E.D.Va.1972). This court has defined "egregious" as "flagrant, blatant, outrageous." *Webster v. Foltz*, 582 F.Supp. 28 (W.D.Mich.1983).

Further, section 1983's language demands a degree of personal involvement connecting a defendant to the claimed deprivation of a constitutional right, and "in § 1983 actions public officials cannot be held vicariously liable for the wrongdoing of others." *Monell v. N.Y. City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611, (1978); *Coffy v. Multi-County Narcotics Bureau, et al,* 600 F.2d 570, 580 (6th Cir.1979); *Redmond v. Baxley,* 475 F.Supp. 1111, 1115 (E.D.Mich. 1979).

■ Applying the foregoing principles to plaintiff's claims against defendant Johnson, I am satisfied that his motion for summary judgment should be granted for the following reasons. Plaintiff's complaint seeks to hold defendant Johnson liable on grounds that he failed to promulgate appropriate rules to avoid the foreseeable risk of harm to other inmates caused by unreasonably dangerous inmates such as defendant Davidson. The record provides no factual basis for this claim and instead reveals that Johnson in fact promulgated numerous policies addressing security procedures and the specific problem of foreseeable violence inherent in any prison. *See,* e.g., PD–DWA 30.01; PD–DWA 30.06.

Without amending his complaint, plaintiff now claims that Johnson may be held personally liable on grounds that as Director of MDoC at the time of plaintiff's injury, Johnson was the person responsible for overcrowding in the state's prisons. Plaintiff theorizes that this overcrowding, in combination with security classification and chain of command policies promulgated by Johnson, led to the events and decisions regarding Davidson which kept him in the general prison population and allegedly permitted his assault on plaintiff to occur. In plaintiff's answer to defendants' motion for summary judgment, these claims are summarized as follows:

"Granted, Johnson is not liable on a respondeat superior doctrine. However, since Michael Swartz' constitutional rights have been deprived, in part, due to the overcrowding and inability to transfer dangerous inmate Davidson, Johnson is sufficiently involved for liability to attach. He was the Director of the Department of Corrections at that time. He was responsible for setting up this system whereby a person such as Dr. Houseworth, who did not have the benefit of the file itself, or the opportunity to discuss the issue of transfer in detail with the requesting personnel [sic]. In fact, Dr. Houseworth indicated that he originally approved the recommendation for transfer and agreed with it, and then crossed off his signature and wrote in a denial. He indicated that this could have been due to overcrowding. As director of the Department of Corrections at that time, Defendant Johnson is the person responsible for this overcrowding. In addition, he was responsible for the employee handbook and rules which prevented people such as Roxanne Thibault, who knew Rudy Davidson was dangerous and needed to be transferred to a closer custody facility, from stepping out of line and going over Dr. Houseworth's head, or even calling Dr. Houseworth herself. As indicated in her deposition, rules promulgated by the department prevented her from doing that."

■ Plaintiff's new theory of liability as to defendant Johnson is deficient on a number of levels. I would note, without ruling, that defendant Johnson's purported contribution to plaintiff's injury is, from an analytical standpoint, so attenuated that it cannot seriously be argued that the assault on plaintiff was a natural consequence of Johnson's conduct. The evidence is undisputed that Johnson never had any prior awareness or knowledge of a threat to plaintiff's safety—plaintiff never asked for protective custody prior to being assaulted on November 27, 1980. Plaintiff's own deposition testimony negates any inference that a pattern of inmate assaults occurred in the area of the prison where plaintiff was housed. Further, there is Sixth Circuit authority for the proposition that a prison official cannot be held personally liable in damages for prison overcrowding

and the consequences of that overcrowding. *Schmidt v. Wingo*, 499 F.2d 70, 74 (6th Cir.1974). I also agree with defendants that the challenged security classification and chain of command policies were not the moving force nor cause in fact of any purported constitutional violation. Finally, the record contains the uncontroverted deposition testimony of Johnson that security classification recommendations made by the Security Classification Committee ("SCC") were ultimately decided by Dr. Houseworth, the regional administrator, who possessed absolute discretion, within reason, to deny or approve a recommended transfer or security reclassification, and Johnson himself had no responsibility or obligation to oversee the day-to-day operations of any MDoC facility or sub-unit.

In short, plaintiff has failed to show the requisite degree of personal involvement connecting defendant Johnson to the claimed deprivation of plaintiff's constitutional rights, nor has plaintiff established any act or omission on his part sufficiently harmful to evidence deliberate indifference to plaintiff's physical well-being. Accordingly, defendant Johnson's motion for summary judgment should be granted.

█ I am also satisfied that defendant Handlon is entitled to summary judgment dismissing the claims against him. As indicated, plaintiff's own deposition testimony reveals that this is an isolated assault case, not a case involving a pattern of undisputed and unchecked violence at MTU. Plaintiff's deposition testimony further establishes that Handlon had no prior awareness or knowledge of any specific threat to plaintiff and indeed could have had none, since plaintiff never requested protection before he was assaulted and plaintiff's only contact with Handlon occurred after the assault, when plaintiff requested a transfer.

Viewing the record in the light most favorable to plaintiff, there is evidence that Handlon, because of the passage of SCC documents over his desk, knew of Davidson's assaultive propensities. He knew that the SCC had recommended his transfer to a closer custody facility, he approved that recommendation, and knew that Dr. Houseworth, the regional administrator, had subsequently denied the recommended transfer. There is further evidence that after denial of that transfer recommendation by Dr. Houseworth, Handlon, on November 13, 1980, approved Davidson's application requesting transfer to a resident "halfway" home, even though comments on the transfer application indicated that Davidson was a very poor case for such a transfer and indicated that the SCC had earlier recommended that he be transferred to closer supervision. Handlon admitted that there was a strong possibility that overcrowding problems influenced his decision to approve Davidson's halfway house transfer application, even though that decision seemed to inherently contradict the SCC recommendation that he be transferred to closer rather than less restrictive custody. There is further evidence that the halfway house transfer application was subsequently denied by Handlon's superiors on November 17, 1980, only ten days prior to Davidson's assault on plaintiff.

Plaintiff claims that Handlon's conduct regarding Davidson was callously indifferent because he did not care whether Davidson was moved to closer custody or to a halfway house, as long as he was moved out of the MTU. There is an inherent illogic in plaintiff's approach. Plaintiff damns Handlon for allowing Davidson to remain in the general prison population despite his violent propensities, but relies upon evidence which, on even the most liberal reading, establishes that Handlon consistently did what he could to get Davidson out of the MTU. Handlon approved the closer custody transfer recommendation which Houseworth ultimately denied. Handlon approved Davidson's halfway house transfer application, which Handlon's superiors ultimately denied.

The record establishes that Handlon's position did not permit him to overrule final security classification and transfer recommendation decisions made by his superior,

Dr. Houseworth. Handlon testified that as warden, he could contact Dr. Houseworth if he disagreed with a denial of a transfer requested. He testified that he probably did not bother to speak to Dr. Houseworth about denial of the closer custody transfer recommendation, or about the problems generally presented by Davidson, because in his opinion as warden, "we had many other young men in this institution who had records just as bad and a behavior pattern just as bad as Rudy Davidson."

Finally, Handlon certainly would have been obligated to provide plaintiff with protection if plaintiff had requested it. In the absence of such a request, and in the absence of some conduct by Davidson allowing punitive segregation and disciplinary action to be taken against him, plaintiff has pointed to no authority on Handlon's part to simply remove Davidson from the general population and impose restrictions upon him.

Even the most liberal reading of the evidence leads to only one conclusion—if plaintiff has established anything against Handlon, at the very most he has established a weak inference of potential simple negligence on Handlon's part in failing to call Dr. Houseworth to lobby for a reversal of Houseworth's denial of the closer custody transfer recommendation. The record is barren of facts to support an inference that Handlon's conduct regarding Davidson was egregious or sufficiently harmful to evidence deliberate indifference to plaintiff's physical well-being. The case law consistently holds that there must be more than an isolated incident of negligent failure to protect to establish an eighth amendment deprivation claim under section 1983. *See Webster v. Foltz, Penn v. Oliver,* and *Williams v. Fields, supra.*

Finally, the following observations, distressing as they may be, are pertinent here and worthy of note:

"Indeed it is doubtful that inmate against inmate violence can ever be prevented within a prison setting no matter how carefully a prison might be operated. Courts must comprehend the magnitude of the prison administrators' prob-

lem and recognize the distinctly unique situation caused by confining human beings in a tension-filled atmosphere. Inmate assaults upon inmates are not unusual in the best run prisons."

*Campbell v. Anderson,* 335 F.Supp. 483, 486 (D.Del.1971). For the reasons stated above, defendant Handlon's motion for summary judgment is granted.

2. *Pendent State Claims.*

Plaintiff's federal claims thus being dismissed prior to trial, plaintiff's pendent state claims are hereby dismissed as well. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726–727, 86 S.Ct. 1130, 1139–1140, 16 L.Ed.2d 218 (1966). *See also Nash & Associates, Inc. v. Lum's of Ohio, Inc.,* 484 F.2d 392 (6th Cir.1973).

### Conclusion

The motion for summary judgment filed by defendants Johnson and Handlon is granted. Plaintiff's federal claims against them are dismissed with prejudice. Plaintiff's pendent state claims against them are dismissed, without prejudice.

Since the sole claim against defendant Davidson is a pendent state claim for assault and battery, that claim is also dismissed without prejudice.