787 F.2d 590
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NATHANIEL GRIGGS, Plaintiff-Appellant,
vs.
ROBERT BROWN, JR., et al., Defendants-Appellees.
 84-1796
 United States Court of Appeals, Sixth Circuit.
 3/3/86
 
 AFFIRMED
 E.D.Mich.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN
 Before: CONTIE, Circuit Judge; PECK, Senior Circuit Judge; and GIBSON, District Judge.*
 PER CURIAM.
 
 
 1
 Nathaniel Griggs appeals from an order of the district court dismissing his complaint pursuant to 42 U.S.C. Sec. 1983 alleging violation of the Eighth Amendment by defendants Brown and Mintzes. For the reasons that follow, we affirm.
 
 I.
 
 2
 On December 8, 1981, Nathaniel Griggs, while confined at Jackson Prison, filed a complaint against Barry Mintzes, warden of Jackson Prison, and Robert Brown, Jr., deputy director of Jackson Prison. Griggs alleged that since he agreed to be a witness for the prosecution in 1979, he has been in constant danger and has had to defend himself from several assaults on his life. Griggs attributed these assaults to his aid to the prison administration. Griggs alleged that he had asked the administration for a transfer, had written to Brown, and had utilized prison grievance procedures to no avail. As relief, Griggs requested to be transferred to a medium or minimum custody facility, to receive six months of good time he had lost while defending himself from attacks, and $5,000. Process addressed to Robert Brown in Lansing was received by Mary Benjamin, 'exec. aid,' and process addressed to Mintzes was received by Connie McEnroe.
 
 
 3
 On February 28, 1982, the case was referred to a magistrate, and, on June 22, the magistrate recommended that the complaint be dismissed unless Griggs filed an amended complaint alleging specific facts. On September 2, 1982, the district court directed plaintiff to file an amended complaint, and, on September 7, Griggs filed an amended complaint. Griggs alleged that in 1978, prison officials, specifically ex-deputy warden Dwayne Sholes, asked Griggs to testify against another resident. Because of his status as an informer, Griggs was transferred to Kinross Correctional Facility. However, after a couple of years, Griggs committed a disciplinary violation and was transferred to Jackson, a maximum custody facility. Griggs alleges that he wrote several times to Brown, explaining his status as an informer, but was ignored. Griggs was transferred to protective custody in Jackson but was assaulted. Griggs then filed the original complaint in this case. He was then transferred from protective custody to the general population. In February 1982, Griggs was assaulted, and, allegedly, left indefinitely handicapped.
 
 
 4
 On February 9, 1984, a hearing was held before the magistrate. Griggs testified that he was in state prison from May 31, 1977 until the day before Thanksgiving 1982. Griggs indicated that in 1979 he testified against inmate Rodney Gillis for having a knife.
 
 
 5
 Griggs was transferred to Jackson Prison on May 5, 1981, but remained in protective custody. While in protective custody, Griggs was involved in an altercation with inmate Thompson. Griggs was moved to administrative segregation, and, then, on November 20, 1981, was released to the general population. The attack on Griggs by inmate Colbert occurred on February 28, 1982. The attack was allegedly related to collection of a gambling debt, although Griggs alleged that both attacks were related to his reputation as an informer. After the attack, Griggs was placed in protective custody until his parole.
 
 
 6
 Griggs admitted that he never identified a particular inmate he feared to Brown or Mintzes and admitted that he asked to be released from administrative segregation or protective custody.
 
 
 7
 That's one of the reasons that I asked to leave administrative segregation. It wasn't no more protection over there than it was out there in the yard. And so if I was going to be locked up, I wanted to have some kind of freedom of movement. So I had been locked up in protective custody three or four months. So I asked them to release me. They released me, and that's when Colbert got me.
 
 
 8
 Griggs testified that he was attacked by Thompson because of his testimony for the State in the Gillis case. Griggs indicated that in protective custody the prisoners have access to each other at dinner and yard time.
 
 
 9
 Robert Brown, deputy director of the Bureau of Correctional Facilities, testified that he is responsible for the day-to-day operations of the state's prisons. Further, '[m]ost letters from prisoners are referred to a regional administrator who has the responsibility of supervision for that particular prison or to the warden of the prison in which the prisoner is housed.' Brown testified that he had received one letter from Griggs requesting a transfer from the Kinross facility. Brown indicated that Griggs never indicated that he was in danger. Thomas Phillips, administrative assistant to the warden of Jackson Prison, testified regarding the differing levels of custody within Jackson Prison.
 
 
 10
 On February 9, 1984, the magistrate recommended that the court enter judgment of $5,000 against each defendant. The magistrate indicated that the letter from Griggs to Brown reported that Griggs was in danger due to his prior testimony for the state. The magistrate concluded that the defendants were not liable for the assault on Griggs by Thompson because they had no reasonable notice of his need for protection. The magistrate reached a different result with respect to the assault by Colbert and concluded that the defendants' failure to give Griggs protection in response to his complaint served in early 1982 constituted deliberate indifference. On February 16, the defendants filed objections, and on September 24, 1984, the district court held a hearing. At the hearing Judge Cohn indicated that he could take judicial notice of the fact that Mintzes is responsible for 6,000 prisoners and Brown for 12,000.
 
 
 11
 On October 4, 1984, the district court dismissed the case, holding:
 
 
 12
 There is simply no evidence that either defendant was even aware of plaintiff's concerns. Each defendant is regularly named as a defendant in prisoner civil rights complaints. There is no evidence they personally read each of hundreds of prisoner civil rights complaints in which they are named or that they were aware of this particular complaint. The allegations of this complaint do not constitute the kind of notice that would require either defendant to specifically investigate its allegations. There is no evidence that had either defendant inquired of plaintiff his desires in the matter he would have asked for anything that either defendant could reasonably have done which would have protected plaintiff from the assault he suffered. Also, plaintiff could have requested directly for a return to administrative segregation had he wanted that. Furthermore, the February assault on plaintiff was the kind of random assault that occurs with some frequency in a prison and there is no evidence linking it with plaintiff's participation as a prosecution witness in 1978.
 
 II.
 
 13
 'A prisoner has a 'clearly established' Eighth Amendment right to be reasonably protected from known dangers of attacks by fellow inmates.' Miller v. Solem, 728 F.2d 1020, 1024 (8th Cir.), cert. denied, 105 S. Ct. 145 (1984); Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985); Davidson v. O'Lone, 752 F.2d 817, 828 (3d Cir. 1984) (en banc), aff'd, 54 U.S.L.W. 4095 (January 21, 1986);[1] Stokes v. Delcambre, 710 F.2d 1120, 1124 (5th Cir. 1983). Liability may be established by demonstrating 'intentional conduct, deliberate or reckless indifference to the prisoner's safety, or callous disregard on the part of prison officials.' Davidson, 752 F.2d at 828; Miller, 728 F.2d at 1024 ("deliberate indifference' denotes both recklessness and actual intent.'); Webster v. Foltz, 582 F. Supp. 28, 32-33 (W.D. Mich. 1983). See also Roberts v. City of Troy, 773 F.2d 720, 722 (6th Cir. 1985). Mere inadvertence or negligence is insufficient to establish liability pursuant to 42 U.S.C. Sec. 1983. Miller, 728 F.2d at 1024; Stewart v. Love, 696 F.2d 43, 44 (6th Cir. 1982). More specifically, the Eighth Amendment is violated when an officer 'is aware of an inmate's need for protection but fails to take adequate safeguards to protect him.' Miller, 728 F.2d at 1025. Such officers are required to take steps that a reasonable person in his position would take. Riley v. Johnson, 528 F. Supp. 333, 341 (E.D. Mich. 1981).
 
 
 14
 Although after filing of the complaint both defendants had notice of Griggs' need for protection, they were faced at the same time with Griggs' request for a transfer back to the general population. Although Griggs alleges that even protective custody was dangerous as evidenced by his attack by Thompson, it appears that Griggs himself was opting voluntarily for the less restrictive, and, therefore, less safe, custody. Transferring Griggs to the general population at his own request did not constitute deliberate indifference to his safety. Further, there is no evidence to suggest that the attack by Colbert while Griggs was in the general population was related to Griggs' status as an informer. Accordingly, the defendants' failure to place Griggs in a protected status did not constitute deliberate indifference to his safety.[2]
 
 
 15
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable Benjamin F. Gibson, United States District Judge for the Western District of Michigan, sitting by designation
 
 
 [1]
 The Supreme Court has recently addressed an action by a state prisoner for deprivation of due process under the Fourteenth Amendment based on the failure to protect the prisoner from other inmates. Davidson v. Cannon, 54 U.S.L.W. 4095 (January 21, 1986). However, nothing in Griggs' brief on appeal challenges the magistrate's characterization of his claim as alleging violation of the Eighth Amendment. Accordingly, we analyze Griggs' complaint pursuant to Eighth Amendment standards
 
 
 [2]
 The magistrate found defendants not liable for the attack by Thompson. The magistrate concluded that defendants had no reasonable notice of Griggs' need for protection. Plaintiff filed no objection to the magistrate's findings in this respect and does not raise this issue on appeal. Further, we have held that the failure to object to a magistrate's report bars appeal on that point. Thomas v. Arn, 728 F.2d 813 (6th Cir. 1984), aff'd, 106 S. Ct. 466 (1985)