958 F.2d 372
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Dormas RUSSELL, Plaintiff-Appellant,
v.
Newton LUCKETT and John Roution, Defendants-Appellees.
 No. 91-5575.
 United States Court of Appeals, Sixth Circuit.
 March 18, 1992.
 
 Before NATHANIEL R. JONES and MILBURN, Circuit Judges; and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Dormas Russell appeals the orders setting aside the entry of default for plaintiff and directing a verdict for defendants Newton Luckett, a jailer, and John Roution, a deputy, in this civil rights action alleging reckless disregard for safety amounting to cruel and unusual punishment. For the reasons that follow, we reverse.
 
 
 2
 * At the time of the events relevant to this action, Russell was serving a sentence at Marion County Jail for robbery and attempted escape. The incident leading to the present action began when Todd Beck purchased a candy bar and soft drink for both himself and Russell. Chris Gunn then approached Beck and attempted to take his candy bar and drink away from him. Russell stepped in between Gunn and Beck, and a verbal confrontation ensued. Russell then returned to his bunk to play cards with Beck, when Gunn suddenly struck him with a broom handle, knocking out the four middle teeth of his upper partial bridge.[1] Russell also suffered a black eye and lacerated lip.
 
 
 3
 After removing Russell and Beck to another cell, jail personnel took Russell to see a Dr. Polk on two occasions and Dr. Clay Stuart, Russell's longtime dentist, on yet another occasion.[2] Although Russell testified that he did not receive any type of treatment or repair of his teeth for approximately twenty-four months, he acknowledged on cross-examination that for twenty-two of those twenty-four months he was not at the Marion County Jail. He spent the latter period at the Kentucky State Reformatory, where his teeth were not repaired because his condition was characterized as cosmetic.
 
 
 4
 After Russell's release from the penitentiary, Dr. Stuart temporarily repaired the bridge at a cost of $850.00. Dr. Stuart estimated that complete replacement would cost $2,400.00.
 
 
 5
 On November 18, 1988, Russell filed a complaint seeking recovery against Luckett and Roution, among others, under 42 U.S.C. § 1983 (1988) for injuries he sustained while in their custody in the Marion County Jail. Each defendant was served with a copy of the complaint on November 29, 1988. In the complaint, Russell alleged that Luckett and Roution housed him in a cell with individuals that they knew were prone to violence. He alleges further that Luckett and Roution were responsible for a broom being left in his cell and, therefore, being used by a fellow inmate to assault him.
 
 
 6
 Marion County Attorney Charles T. Mattingly was the attorney for Luckett and Roution. Although Mattingly frequently discussed the case with counsel for Russell, James H. Abell, and Abell urged him to file an answer on behalf of Luckett and Roution, Mattingly failed to do so.
 
 
 7
 Counsel for Russell sought a default judgment against Luckett and Roution on September 18, 1989. On December 13, 1989, the district court made an entry of default against them on the issue of liability and scheduled the matter for hearing on damages for January 31, 1990. On January 17, 1990, however, Kenneth Nevitt, attorney for Marion County's insurer, appeared on behalf of Luckett and Roution and moved the district court to set aside its entry of default of December 13, 1989. Nevitt's motion explained that Mattingly's failure to file an answer or appear for over one year was "due to excusable neglect." J.A. at 28. In particular, Luckett and Roution alleged that,
 
 
 8
 in March, 1989, they received notice that a motion to dismiss had been granted to the Defendants. This Order by the Court did not state which parties had been dismissed and Defendants Luckett and Roution assumed that the action had been dismissed against them. They also assumed that the county attorney had filed an answer on their behalf.
 
 
 9
 Id. Therefore, Nevitt asked the court to "allow these parties an additional twenty (20) days from the date of this Order to file an answer to this complaint." Id.
 
 
 10
 After considering arguments by counsel for both sides, the district court directed Luckett and Roution to submit "an affidavit from the Marion County Attorney relative to his conversations and dealings with counsel for plaintiff." Id. at 46. After three months passed without a response to its request, the court denied the motion to vacate the entry of default and again scheduled a hearing on August 3, 1990 for the assessment of damages. Prior to that hearing, Nevitt moved the court to substitute Charles Mattingly as counsel of record, which the court ordered on June 29, 1990.
 
 
 11
 The court rescheduled the hearing for September 28, 1990. On September 21, 1990, however, Joseph H. Mattingly III filed a motion on behalf of Luckett and Roution to continue the hearing on damages, explaining that Charles Mattingly had died on September 4, 1990. Subsequently, on October 15, 1990, Joseph H. Mattingly III filed a motion on behalf of Luckett and Roution, asking the court to reconsider its order denying Luckett's and Roution's motion to vacate entry of default. He included with the motion an answer to the original complaint. Over Russell's objections, the court vacated the entry of default and allowed Luckett and Roution to file the answer on November 9, 1990, just nine days short of two years after Luckett and Roution were served with summons and complaint in this action. The court scheduled the matter for jury trial on February 1, 1991.
 
 
 12
 Because Russell's injury occurred while he was in custody, the key witnesses in his case were also in custody at the Marion County Jail. By the time this case finally proceeded to trial, several of the witnesses were incarcerated in institutions elsewhere in Kentucky, and others were nowhere to be found. Russell's counsel did, however, locate two witnesses.
 
 
 13
 Nevitt reappeared as counsel for Luckett and Roution on January 14, 1991. Two weeks later, the matter was tried before a jury. Dr. Stuart testified that, as a result of the assault and loss of his upper four front teeth, Russell suffered immediate pain and injury, and until his bridge was repaired over two years later, he had trouble biting, and his speech was affected by a lisp. His appearance was also an embarrassment to him.
 
 
 14
 At the conclusion of Russell's case, the judge directed a verdict in favor of Luckett and Roution and dismissed the case with prejudice. Russell now brings this appeal.
 
 II
 
 15
 Russell contends that the district court abused its discretion in setting aside the default judgment almost a year after its entry and two years after Luckett and Roution were served with a summons and complaint. The district court may set aside an entry of default "for good cause shown." Fed.R.Civ.P. 55(c). The district court's decision is reviewed for abuse of discretion. United Coin Meter Co. v. Seaboard Coastline R.R., 705 F.2d 839, 843 (6th Cir.1983). In making this determination, the court of appeals employs a three-part test: " ' [w]hether the plaintiff will be prejudiced; [w]hether the defendant has a meritorious defense; and [w]hether culpable conduct of the defendant led to the default.' " INVST Finan. Group, Inc. v. Chem-Nuclear Sys., Inc., 815 F.2d 391, 398 (6th Cir.) (quoting United Coin, 705 F.2d at 845), cert. denied, 484 U.S. 927 (1987). "The same considerations exist when deciding whether to set aside either an entry of default [Rule 55(c) ] or a default judgment [Rule 60(b) ], but they are to be applied more liberally when reviewing an entry of default." Berthelsen v. Kane, 907 F.2d 617, 620 (6th Cir.1990) (per curiam). " 'Any doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits.' " United Coin, 705 F.2d at 846 (quoting Tozer v. Krause Milling Co., 189 F.2d 242, 245 (3d Cir.1951)).
 
 
 16
 The first prong of the test asks whether the plaintiff would be prejudiced by the order setting aside default. Mere delay does not establish prejudice. INVST, 815 F.2d at 398. The plaintiff must show a negative effect from the delay, such as loss of evidence or difficulties in discovery. Id.
 
 
 17
 In his motion for reconsideration of the court's order setting aside default, Russell alleged such negative effects:
 
 
 18
 [D]uring the past two years the plaintiff's witnesses who were present at the time of the injury have moved to other jurisdictions unknown to the plaintiff. At this late date, it will be difficult, if not impossible, to locate those witnesses and bring them to trial to testify on behalf of the plaintiff.
 
 
 19
 Even if the plaintiff is able to locate the missing witnesses, the events which are the subject of this action occurred years ago. At this point, the evidence from both a documentary and testimonial standpoint is stale.
 
 
 20
 J.A. at 119. Russell's injury occurred while he was in custody at Marion County Jail, so the key witnesses were also in custody at that time. Two years later, however, the witnesses were all either in other prisons or nowhere to be found. Under the circumstances of this case, it seems that Russell made an adequate showing of prejudice.
 
 
 21
 The second prong of the test asks whether the defendant has a meritorious defense. This is not meant to be a technical inquiry. "The key consideration is 'to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default.' " INVST, 815 F.2d at 399 (quoting 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2697, at 531 (1983)). In this regard, Luckett and Roution asserted the following in their successful motion to set aside default:
 
 
 22
 Basically, the Plaintiff alleges that the Defendants' conduct constituted a reckless disregard for his health and safety. However, the allegations contained in the Plaintiff's complaint, at best, raise issues of negligence which is not cognizable as a constitutional violation. Swarts v. Johnson, 628 F.Supp. 549 (W.D.Mich.1986). The indifference alleged of the Defendants must be substantial to violate the constitution. Estelle v. Gamble, 429 U.S. 97 ... (1976).
 
 
 23
 The Defendants specifically deny the bulk of the allegations contained in the Plaintiff's complaint concerning the "known history of assaulting other inmates" of the other prisoners with whom the Plaintiff was placed. The Defendants would further seek to show that promptly following the incident they took the Plaintiff to a local dentist who examined the Plaintiff's condition and determined that there was no medical urgency to perform the dental work requested by the Plaintiff.
 
 
 24
 The Plaintiff was in the custody of the Marion County Jailer and his Deputy for slightly over one month. Following that period of incarceration, he was transferred to the custody of the Warden of the Kentucky State Reformatory. Claims were made against the Warden of that reformatory and against the Secretary of the Corrections Cabinet of the Commonwealth of Kentucky on similar grounds. Those causes of action were dismissed by this Court and it is the Defendants' belief that if they are provided an opportunity to defend this action the Court will find that the claims against them are equally without merit.
 
 
 25
 J.A. at 65-66. The fact that Luckett and Roution were not aware of the dangerous propensities of Gunn and the other individuals in the cell at the time of the incident is certainly a defense if proven.[3] Thus, Luckett and Roution satisfied the second prong of the test.
 
 
 26
 The third prong of the test asks whether culpable conduct of the defendant led to the default. "To be treated as culpable, the conduct of a defendant must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of its conduct on those proceedings." Shepard Claims Serv., Inc. v. William Darrah & Assocs., 796 F.2d 190, 194 (6th Cir.1986).
 
 
 27
 Shepard involved a case in which a lawyer was one week late in filing an answer due to his failure to review the work of his secretary. In finding no culpable conduct, the Shepard court relied on the fact that "[t]he delay was not lengthy and there was no pattern of disregard for court orders or rules." Id. The court concluded as follows:
 
 
 28
 Although a party who chooses an attorney takes the risk of suffering from the attorney's incompetence, we do not believe that this record exhibits circumstances in which a client should suffer the ultimate sanction of losing his case without any consideration of the merits because of his attorney's neglect and inattention.
 
 
 29
 Id. at 195.
 
 
 30
 In the case sub judice, however, the record clearly reveals a reckless pattern of disregard for the court's orders and rules. We may assume, arguendo, that the delay through January 17, 1990--resulting from Charles Mattingly's illness and Luckett's and Roution's confusion as to the status of the action--would not bar Luckett's and Roution's motion to set aside the default. Nonetheless, the failure of attorney Nevitt to respond to the court's request for additional information prevented resolution of this matter at an earlier date. Nevitt was much more than a last-minute substitute attorney; he played a central role in this litigation, as evidenced by his later return to try this case before a jury. Furthermore, Nevitt's return of the case to Charles Mattingly belies any contention that Luckett and Roution should not be accountable; certainly, once an attorney has failed to perform his or her duties on a client's behalf to the extent that substitute counsel is necessary, a client must assume the risk of returning the case to that same attorney.
 
 
 31
 The INVST court found no culpable conduct underlying a sixteen-month delay in filing an answer. 815 F.2d at 399-400. In that case, however, "both parties acted as if the answer had been filed or was not needed." Id. at 399. Here, Russell's counsel continuously demanded that Luckett's and Roution's counsel file an answer. Thus, review of the record reveals that default resulted from reckless disregard.
 
 
 32
 Balancing the factors is simpler than it might first appear. Only one of the three factors weighs in favor of Luckett and Roution. To hold that Luckett and Roution are entitled to set aside the default would be to hold that a meritorious defense will always excuse a defendant's reckless disregard for the court and its rules and permit prejudice to the plaintiff. Such a holding would also reduce this court's inquiry to a one-prong test. Accordingly, review of the record in this case reveals that the district court abused its discretion in setting aside the default.[4]
 
 III
 
 33
 For the foregoing reasons, the decision of the district court to set aside entry of default is REVERSED, the judgment of the district court is REVERSED, and the case is REMANDED for entry of default, a hearing on damages, and judgment by default.
 
 
 34
 ENGEL, Senior Circuit Judge, dissenting.
 
 
 35
 I respectfully dissent because I believe that the range of discretion accorded the trial judge in setting aside defaults under F.R.Civ.P. 55(c) (as contrasted to default judgments) is particularly broad.
 
 
 36
 Several factors support Judge Ballantine's action in setting aside the default. First, we have previously announced "a strong preference for trials on the merits." See, e.g., Shepard Claims Service v. William Darrah & Assoc., 796 F.2d 190, 193 (6th Cir.1986). In addition, it seems that this case presented genuine confusion regarding who was to represent the defendants. Such uncertainty is not unlikely where, as here, it is unclear whether the defendants are sued in a personal or official capacity. Further, one of the defense attorneys was terminally ill and ultimately died. Perhaps the illness should not excuse delay caused by other defense attorneys, but such questions seem peculiarly within the knowledge and judgment of a trial judge who is on the scene, who can better weigh the equities and hence exercise the discretion that Rule 55 confers. Finally, the "negative effects" of delay that Russell alleged here are factually quite general and probably lacked the specificity which might otherwise have persuaded Judge Ballantine that Russell would be prejudiced by setting aside the default.
 
 
 37
 Had I been in Judge Ballantine's shoes, I might myself have denied the motion to set aside the default, because I am in general sympathy with many of the reasons set forth by the majority. There are good reasons to enforce the time requirements. Nevertheless Rule 55(c) vests a trial judge with broad discretion whether to set aside a default. A reasonable trial judge could have decided to set aside the default here. I would therefore affirm.
 
 
 
 [1]
 Russell had a permanent eight-tooth bridge attached to his natural teeth as a result of an injury received in an automobile accident
 
 
 [2]
 Dr. Stuart had treated Russell since 1979, prior to the automobile accident that first damaged his teeth
 
 
 [3]
 Note that Luckett's and Roution's other "defenses" address the provision of inadequate medical care, which Russell does not allege
 
 
 [4]
 Because of our disposition of this issue, we do not reach the issue of whether the district court erred in directing a verdict for Luckett and Roution