959 F.2d 236
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Charles Sidney SIEBLER, Plaintiff-Appellant,
v.
Harold BUCHIGNANI, Jailer; Lexington-Fayette Urban County
Government; Sandra M. Varellas; Other Unknown
Defendants, Defendants-Appellees,
K.C. Tufts, M.D. Defendant.
 No. 91-5900.
 United States Court of Appeals, Sixth Circuit.
 April 6, 1992.
 
 Before RALPH B. GUY, Jr. and DAVID A. NELSON, Circuit Judges, and REAVLEY, Senior Circuit Judge.*
 PER CURIAM.
 
 
 1
 The plaintiff brought this section 1983 action against the Lexington-Fayette area county government and several of its officials after he was assaulted while serving a jail term. Finding no evidence of deliberate indifference to the plaintiff's rights, the district court granted summary judgment to the defendants. We affirm.
 
 I.
 
 2
 In 1988, the plaintiff, Charles Siebler, was sentenced to serve three months in the Lexington-Fayett Urban County Detention Center in Lexington, Kentucky. While incarcerated, Siebler was assaulted by another inmate, Alphonso Scott. Siebler suffered a broken wrist.
 
 
 3
 The detention center was consistently overcrowded in 1988 because the Kentucky Department of Corrections, citing overcrowding at state prisons, had refused to remove state prisoners from the detention center.[1] At the time of the assault, Siebler and Scott were among 31 inmates confined to a "pod" designed to hold 15 inmates. Although the detention center had a policy of classifying and segregating inmates in order to avoid violent confrontations, the inmates in the pod were unclassified because of the overcrowding.
 
 
 4
 Siebler's pod was monitored remotely from a guard station. A guard inspected the pod approximately once every 40 minutes. According to Siebler, after the assault, he yelled for help for approximately ten minutes before a guard arrived. During that time, Scott did not assault Siebler further.
 
 
 5
 Siebler brought this action in 1989, alleging that the county and several of its officials had violated his Eighth Amendment right to be free of cruel and unusual punishment. After discovery, all parties moved for summary judgment. The district court granted summary judgment to the defendants, finding that there was no evidence that the defendants were deliberately indifferent to Siebler's security. Siebler then filed this appeal.
 
 II.
 
 6
 The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishments" on those convicted of crimes. To state a claim that conditions of incarceration violate the Eighth Amendment, a plaintiff must allege that prison or jail officials have engaged in "unnecessary and wanton infliction of pain." Gregg v. Georgia, 428 U.S. 153, 173 (1976).
 
 
 7
 In Wilson v. Seiter, --- U.S. ----, 111 S.Ct. 2321 (1991), the Supreme Court adopted a two-prong test for Eighth Amendment claims based on prison conditions. First, the plaintiff must establish that he or she suffered a serious deprivation of life's minimal necessities. Id. at 2327. Second, the plaintiff must show that the defendants exhibited "deliberate indifference" to the deprivation. Id. This second prong does not depend on the challenged conduct's effect on the prisoner; instead, it requires examination of the "constraints facing the official." Id. at 2326.
 
 
 8
 Siebler contends that the district court erred in finding no issue as to whether the defendants violated his Eighth Amendment rights. We review the district court's grant of summary judgment de novo. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990).
 
 
 9
 Siebler points to several conditions that he contends amount to Eighth Amendment violations. First, the pod in which Siebler was confined, and the detention center as a whole, were overcrowded at the time of the assault. As a result of the overcrowding, the jail was unable to strictly classify and segregate inmates. The deposition testimony of Dr. Rowan, an expert witness, and Raymond Sabbatine, the detention center's current jailer, both indicate that assaults become more likely when a jail is overcrowded.
 
 
 10
 The defendants argue that overcrowding, without more, does not amount to an Eighth Amendment violation. See Rhodes v. Chapman, 452 U.S. 337, 348 (1981). The defendants also contend that Siebler has failed to show that the overcrowding caused the assault.
 
 
 11
 Even if the overcrowding caused the assault, however, Siebler has failed to allege that the defendants were deliberately indifferent to the problem. On the contrary, the record demonstrates that the county and the detention center went to court in an effort to relieve its overcrowding problem. The overcrowding persisted, however, because the state chose to pay penalties rather than comply with the court order. Since the detention center lacked legal authority to release prisoners, the state's refusal to comply with the order left the defendants powerless to relieve the problem.
 
 
 12
 There is also no indication that the defendants were deliberately indifferent to any danger to Siebler from Scott, since there is no evidence that Scott had threatened or assaulted Siebler or other inmates before. Cf. Walker v. Norris, 917 F.2d 1449, 1453 (6th Cir.1990) (affirming liability of prison officials when they ignored "obvious notice of imminent danger" to plaintiff); Stewart v. Love, 696 F.2d 43, 44 (6th Cir.1982) (finding prison officials merely negligent for failing to move plaintiff after he informed them of unsubstantiated rumor of impending assault).
 
 
 13
 Finally, Siebler argues that the delay between the assault and the arrival of a guard amounts to an Eighth Amendment violation. According to Siebler, the guard arrived approximately ten minutes after the assault. During this time, Siebler suffered no further injury from Scott or any other inmate. Frank Livingston, the guard on duty that day, testified in his deposition that he checked the pod every 35 to 40 minutes.
 
 
 14
 Siebler has not shown how the alleged ten-minute delay amounted to a serious deprivation. He does not allege that he suffered any further injury during the delay. He points to no authority supporting his argument that an inspection every 35 to 40 minutes is too infrequent.[2] Even if the delay amounted to a serious deprivation, Siebler has not alleged that the delay resulted from deliberate indifference. Siebler does not deny that, once the officials learned of his injury, they promptly removed him from the pod and transported him to a hospital.
 
 
 15
 We agree with the district court that Siebler's allegations do not create a genuine issue of fact as to whether the defendants were deliberately indifferent to Siebler's Eighth Amendment rights. Therefore, summary judgment is appropriate.
 
 
 16
 AFFIRMED.
 
 
 
 *
 Honorable Thomas M. Reavley, United States Court of Appeals for the Fifth Circuit, sitting by designation
 
 
 [1]
 The Lexington-Fayette Urban County Government had filed suit against the Department of Corrections and obtained an order requiring the state to remove state prisoners from the detention center. The Department of Corrections chose to pay fines rather than comply with the order
 
 
 [2]
 According to the defendants, Kentucky state regulations require an inspection only once an hour