John Everett MILLER, Appellant,

v.

Herman SOLEM, Warden, South Dakota
State Penitentiary, and Gay
Krull, Appellees.

No. 83-1497-SD.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 14, 1983.

Decided Feb. 23, 1984.

Rehearing Denied March 22, 1984.

Lon J. Kouri, May, Johnson, Doyle & Becker, P.C., Sioux Falls, S.D., for appellant.

Mark V. Meierhenry, Atty. Gen., Jeffrey P. Hallem, Asst. Atty. Gen., Pierre, S.D., for appellees.

Before BRIGHT, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and HANSON *, Senior District Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

John E. Miller, an inmate at the South Dakota State Penitentiary, appeals from the district court's summary judgment dismissal of his *pro se* § 1983 suit against defendants Warden Herman Solem and prison staff member Gay Krull for damages sustained as a result of being stabbed by a fellow inmate. We affirm.

Viewing the undisputed material facts in a light most favorable to Miller, we conclude that defendants did not "recklessly disregard" Miller's constitutional rights—specifically, his Eighth Amendment right to be free from cruel and unusual punishment.

I.

The relevant facts were disclosed by way of Miller's verified complaint, his supporting affidavits, defendants' affidavits, and the state criminal trial transcript in *State v. Miller,* CR. No. 80–77 (S.D.1980) which detailed the events surrounding the stabbing incident.

On November 1, 1978, Miller and fellow inmate William Conger had a fight in the "Trusty Cottage", a house located outside the prison wall and used as living quarters for "trusty" inmates like Miller and Conger. As a result, both men were disciplined; for Miller, this meant being taken back inside the penitentiary walls. Miller was later transferred to the penitentiary's West Farm, located approximately 13 miles west of the penitentiary. According to Solem, Miller was transferred to the West Farm instead of back to the Trusty Cottage to

---

* The Honorable William C. Hanson, United States Senior District Judge for the Northern and Southern District of Iowa, sitting by designation.

prevent his coming into contact with Conger, who still resided at the Cottage.

Occasionally, West Farm inmates, like Miller, needed services that were available only at the penitentiary. Typically, when these occasions arose, a prison staff member would transport the inmates to the Trusty Cottage lobby, where they would wait until called to the penitentiary. However, Warden Solem, aware of the hostility between Miller and Conger, advised subordinates of a precautionary arrangement for transporting Miller to the penitentiary. Under this arrangement, when Miller was taken to the penitentiary, he was to be dropped off at the Main Administration Building, rather than the Cottage. Solem thought this would be sufficient to prevent a possible confrontation between Miller and Conger. Solem apparently discussed the precautionary arrangement with Miller.

Defendant Gay Krull, a West Farm maintenance supervisor, frequently transported inmates from the West Farm to the penitentiary. On one such occasion, Krull drove Miller to the penitentiary and stopped at the Trusty Cottage. Miller told Krull that he was not to be left at the Cottage, but was to be taken to the lobby of the Main Administration Building. Although unaware of Solem's precautionary arrangement, Krull acceded to Miller's request and took him to the Administration Building.

On June 1, 1979, Krull again drove Miller, along with other West Farm inmates, to the penitentiary. This time Krull proceeded to the Cottage, where Miller voluntarily got off along with other inmates. Krull stated in his affidavit that Miller did not request to be taken to the Administration Building this time; Krull therefore assumed that whatever reason there was for taking him there had ended. Conger spotted Miller in the Cottage lobby and stabbed him. Defendant Krull and staff officer Nelson immediately came to Miller's assistance and disarmed Conger. Conger was disciplined for the assault but no state criminal charges were filed because Miller told South Dakota DCI Investigator Devansky that he had not been assaulted by Conger.

On November 3, 1981, Miller filed his *pro se* § 1983 complaint, which was amended on June 11, 1982. Claiming "cruel and unusual punishment," Miller alleged: 1) defendants allowed the stabbing attack of Miller because Miller had refused to commit a murder for Solem; 2) defendants knew of the danger to Miller and did nothing to prevent the attack.

In June 1982, Miller sent various interrogatories to defendants, which they answered in July 1982. In November 1982, defendants filed their summary judgment motion, along with supporting affidavits. In them, both defendants stated they had no animosity toward Miller and no prior knowledge of Conger's attack. Solem stated that prior to the stabbing, inmate Conger had threatened numerous people, including Solem and Miller, but had never attempted to carry out any threat. However, as a precautionary measure, Solem instructed subordinates that Miller was not to be taken to the Trusty Cottage. Solem stated that he was never aware of any complaint that his instructions for transporting Miller were not being followed.

On December 1, 1982, Miller requested an order compelling discovery of Conger's disciplinary record, his "rap sheet", and documents relating to the criminal investigation of the stabbing incident. Defendants produced these documents. Also, on December 1, 1982 the district court, seeking to resolve defendant's motion for summary judgment, gave Miller until January 3, 1983 to submit opposing affidavits, other relevant materials, and an answering brief. Miller received an extension and on February 17, 1983, filed a thorough legal brief, several affidavits, and other materials in response to the summary judgment motion. The affidavits, signed by Miller and three other inmates, indicated that Associate Warden Rist told Miller that he was generally aware of the animosity between Miller and Conger, but that Solem had not specifically advised Rist of the precautionary transportation arrangement for Miller.

In addition to the affidavits filed by both Miller and defendants, the court also had

the entire transcript of the criminal action of *South Dakota v. Miller,* CR. 80–77 (S.D. 1980) which included a detailed account of the events surrounding the stabbing. Specifically, it contained Conger's testimony that his June 1, 1971 attack of Miller was "purely spontaneous".

The district court, viewing the undisputed evidence in a light most favorable to Miller, concluded that defendants were not deliberately indifferent to the constitutional rights of Miller; that they neither intended to deprive Miller of any rights nor acted with reckless disregard to his right to be free from attacks by fellow inmates. The court found that at most Solem was negligent in not informing Krull to take Miller to the Administration Building rather than the Cottage.

## II.

Miller claims summary judgment was improper because: 1) the district court failed properly to notify him of his right to file counter affidavits and present other evidence in order to produce a triable issue of fact; 2) material factual evidence existed as to whether defendants were deliberately indifferent to his right to be protected from Conger.

Initially, there can be little doubt that the district court properly notified Miller of his right and duty under Fed.R.Civ.P. 56 to present affidavits or other materials in opposition to defendant's summary judgment motion. The court order of December 1, 1982 states:

I conclude that an orderly resolution of this action requires that the summary judgment motion be resolved. Pursuant to Rule 56 of the Rules of Civil Procedure, I will give plaintiffs until January 3, 1983 to submit opposing affidavits or other materials relevant to the motion for summary judgment, and an answering brief. The defendants shall have until January 21, 1983 to file and serve a reply brief. I will then decide the motion on the record thus made.

Pursuant to Miller's request, the court gave him until February 19, 1983 to file an answering brief, affidavits, and other materials. The correspondence letters between Miller and the district court reveal that Miller understood his obligations under Rule 56. Moreover, Miller responded to defendants' motion for summary judgment by filing an extensive legal brief, along with several affidavits and other materials, including a deposition of Associate Warden Rist and defendants' answers to various interrogatories. Miller has not shown how the district court prejudiced his case by denying him an opportunity to file any other relevant responsive materials. *Compare Jensen v. Klecker,* 599 F.2d 243, 245 (8th Cir.1979).

Miller's second claim—that there were material issues of fact regarding defendants' liability—is more problematic. In determining whether the district court properly granted summary judgment, we are guided by Fed.R.Civ.P. 56. Summary judgment, sometimes called an "extreme remedy", is appropriate only if the moving parties, the defendants here, demonstrate that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Cummings v. Roberts,* 628 F.2d 1065, 1068 (8th Cir.1980). In passing on a summary judgment motion, a court must view the evidence "in a light most favorable to ... the party opposing the motion." *Diebold,* 369 U.S. at 655, 82 S.Ct. at 994. Also a court must liberally construe *pro se* civil rights complaints. *Jensen v. Klecker,* 599 F.2d 243, 245 (8th Cir.1979).

However, a party opposing a motion for summary judgment is not without obligations. Rule 56(e) states that "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest on mere allegations or denials of his pleadings, but his response, by affidavit or otherwise provided in this rule, must set forth specific facts that there is a genuine issue for trial." And, nonmovants' affidavits must conform

to Rule 56(e), which states in pertinent part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to all matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

■ Finally, conclusive assertions of ultimate fact are entitled to little weight when determining whether a nonmovant has shown a genuine issue of fact sufficient to overcome a summary judgment motion supported by complying affidavits. 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure,* § 2727 at pp. 157–59 (1983); *cf. Cummings v. Roberts,* 628 F.2d at 1069.

■ Miller's complaint alleged that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by refusing or failing to take adequate precautions to protect him from attacks by inmate Conger. To sustain this claim, Miller "must show something more than mere inadvertence or negligence. He must show the defendants were deliberately indifferent to his constitutional rights, either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates". *Branchcomb v. Brewer,* 669 F.2d 1297, 1298 (8th Cir.1982); *see also Clark v. Taylor,* 710 F.2d 4, 9 (1st Cir.1983) (prison official liable under § 1983 where conduct "reflects a reckless or callous indifference to the rights and safety of the prisoners in his charge"); *Little v. Walker,* 552 F.2d 193, 197–98 (7th Cir.1977), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978); *Estelle v. Gamble,* 429 U.S. 97, 104–06, 97 S.Ct. 285, 291–292, 50 L.Ed.2d 251 (1976). Hence, "deliberate indifference" denotes both recklessness and actual intent. *Little v. Walker,* 552 F.2d at 197–8, n. 8.

Application of *Branchcomb's* "deliberate indifference" standard is affected somewhat by the fact that defendants have asserted a good faith qualified immunity defense. In *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738–2739, 73 L.Ed.2d 396 (1982) the Supreme Court set forth an objective qualified immunity standard, holding that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Prior to *Harlow,* the good faith standard also included a subjective component, requiring a court to determine if an official acted with the "malicious intention" to deprive constitutional rights. 457 U.S. at 815, 102 S.Ct. at 2737; *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1000–1001, 43 L.Ed.2d 214 (1975). Many courts regarded defendant's subjective intent as a question of fact unsuitable for resolution by summary judgment. *Harlow,* 457 U.S. at 816, n. 27, 102 S.Ct. at 2738, n. 27; *See also Green v. White,* 693 F.2d 45, 47 (8th Cir.1982). The *Harlow* court abandoned the subjective intent inquiry, viewing it as incompatible with the admonition of *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) "that insubstantial claims should not proceed to trial." *Harlow,* 457 U.S. at 815, 816, 102 S.Ct. at 2737–2738. The court concluded that "bare allegations of malice should not suffice to subject government officials either to the cost of trial or to the burdens of broad-reaching discovery". 457 U.S. at 817–18, 102 S.Ct. at 2738.

■ A prisoner has a "clearly established" Eighth Amendment right to be reasonably protected from known dangers of attacks by fellow inmates. *Cline v. Herman,* 601 F.2d 374, 375 (8th Cir.1979); *Gullatte v. Potts,* 654 F.2d 1007, 1012 (5th Cir. 1981). Accordingly, it has been recognized that prison officials are not entitled to an objective good faith defense if they are aware of a risk of injury to an inmate and nevertheless fail to take appropriate steps to protect the inmate from that known danger. *Gullatte,* 654 F.2d at 1012–13; *Brown*

*v. United States,* 486 F.2d 284, 287–88 (8th Cir.1973). This qualified immunity standard parallels that part of *Branchcomb's* "deliberate indifference" standard asking whether a prison official exhibited a "reckless disregard" to the inmates need for protection; both require something more than mere negligence yet less than malicious or actual intent. *Compare Smith v. Wade,* —— U.S. ——, —— – ——, 103 S.Ct. 1625, 1639–1640, 75 L.Ed.2d 632, 650–51 (1983), and *Branchcomb,* 699 F.2d at 1298; *see also Little v. Walker,* 552 F.2d 193, 197–98, n. 8. If an officer recklessly disregards an inmate's need for safety he certainly cannot maintain an objective good faith immunity defense. *Smith v. Wade,* —— U.S. at ——, 103 S.Ct. at 1640, 75 L.Ed.2d at 651; *cf., Haygood v. Youger,* 718 F.2d 1472, 1483–84 (9th Cir.1983). By the same token, if a prison official fails the objective good faith immunity test—i.e., he is aware of an inmate's need for protection but fails to take adequate safeguards to protect him—then he has exhibited the sort of "reckless indifference" sufficient to constitute "cruel and unusual punishment". *Gullatte,* 654 F.2d at 1012.

■ However, the objective qualified immunity standard and *Branchcomb's* "deliberate indifference" standard differ in the sense that the former does not require an inquiry into whether the prison official "actually intended" to deprive a prisoner of his constitutional right, provided the official's conduct satisfies the objective good faith test. *See Gullatte,* 654 F.2d 1012–1014. Under *Harlow's* logic, if defendants can establish there is no material issue of fact regarding their objective good faith, then the court should not deny summary judgment merely because the plaintiff has alleged that the defendants maliciously intended to deprive him of his constitutional rights. *Harlow,* 457 U.S. at 817–18, 102 S.Ct. at 2738–2739.

Thus, since defendants have raised a qualified good faith immunity defense our inquiry here is whether Miller has raised a material factual issue as to defendants' "reckless disregard" to his right for protection from attacks by Conger. *Smith,* —— U.S. at ——, 103 S.Ct. at 1640, 75 L.Ed.2d at 651. Such "reckless disregard" could be demonstrated by facts showing that defendants were aware of the risk of Conger's attack but nevertheless failed to take appropriate steps to protect Miller. *Gullatte,* 654 F.2d at 1012–13.

■ In his complaint, Miller made some sweeping conclusory allegations that both defendants intentionally failed to protect him from Conger's attack and that Solem allowed the attack because Miller failed to commit murder for Solem.[1] The defendants countered these allegations by way of affidavits supporting their summary judgment motion. These affidavits, made upon personal knowledge, set forth facts which, if undisputed, would clearly demonstrate defendants lack of "reckless disregard" for Miller's need for protection from Conger. Specifically, the affidavits established: 1) Solem transferred Miller to the West Farm instead of the Trusty Cottage to avoid his coming into contact with Conger; 2) as a precautionary arrangement, in 1979 Solem instructed subordinates that when Miller was taken to the penitentiary he was to be dropped off at the Administration Building rather than the Trusty Cottage; 3) Miller was advised of this precautionary arrangement; 4) Krull, though unaware of this arrangement, took Miller to the Administration Building when Miller so requested; 5) on the day of the stabbing, Miller voluntarily got off at the Trusty Cottage without asking Krull to take him to the Administration Building; 6) Krull immediately went to Miller's assistance after Conger's attack; 7) defendants had no prior knowledge that Conger would attack Miller. In addition, the trial court had the criminal transcript in *State v. Miller,* which included Conger's tri-

---

1. This allegation charging Solem with a felony is both incredible and shocking. This bare bones charge without any supporting data should not have been made; if there is sub- stance to it, the whole picture should have been disclosed in the complaint. As a bare, self- serving conclusion it is not entitled to any con- sideration.

al testimony that the attack was purely spontaneous.

Apart from relying on the conclusory allegations in his amended complaint, Miller attempted to raise a material factual issue by submitting four inmate affidavits. The affidavits told of an alleged conversation Miller had with Associate Warden Rist, during which Rist admitted that Solem had not personally notified him of the precautionary transportation arrangement for taking Miller to the penitentiary. Miller similarly relied upon Krull's statement in his affidavit that he was unaware of Solem's precautionary arrangement.

 Viewing all of the submitted evidence in a light most favorable to Miller, we conclude that Miller has not shown the existence of a material factual dispute regarding defendants' liability. First, other than conclusionary allegations, Miller has made no attempt to raise a factual dispute regarding Krull's liability. Undisputably, Krull, a West Farm maintenance supervisor, was unaware of Solem's precautionary arrangement for transporting Miller. There has been no suggestion that Krull's lack of knowledge was attributable to a reckless disregard for Miller's need for protection. Further, Krull was willing to comply and indeed did comply with Miller's request to be taken to the Administration Building. Krull's failure to take him there on the day of the stabbing was a result of Miller's own voluntary actions.

As to Solem's liability, Miller's inmate affidavits containing Associate Warden Rist's hearsay statements failed to comply with Rule 56(e) requirement that the facts set forth in affidavits be admissible in evidence. However, even indulging this deficiency, we conclude that Solem's failure to personally notify either Rist or Krull of the transportation policy does not indicate Solem's "reckless disregard". It is undisputed that Solem told other individuals on the penitentiary staff of the policy. Miller was also told of this policy, as reflected by the fact that he advised Krull of it on one occasion. There is no indication of Solem's awareness that his policy was not being followed or was ineffective. Perhaps most critically, however, it is undisputed that just before the stabbing Miller voluntarily got off at the cottage without requesting to be taken to the Administration Building. Miller apparently disregarded his own need for protection from Conger.

Finally, Miller's conclusory allegations that defendants knew that Conger was going to attack Miller and permitted him to do so because they harbored malice toward him and intended to harm him are unsupportable, frivolous, and cannot withstand summary judgment. *See Harlow,* 457 U.S. at 817–18, 102 S.Ct. at 2738–2739; *Maiorana v. MacDonald,* 596 F.2d 1072, 1077 (1st Cir.1979); *Cummings,* 628 F.2d at 1069.

Judgment affirmed.