89 F.3d 837
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Alison WARD, Plaintiff-Appellant,
v.
CITY OF STREETSBORO; Sally Hensel, Mayor Gerald Vicha, Fire
Chief, Defendants-Appellees.
 No. 95-3838.
 United States Court of Appeals, Sixth Circuit.
 June 24, 1996.
 
 Before: KENNEDY, JONES and CONTIE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff-appellant, Alison Ward, appeals the judgment for defendants-appellees, City of Streetsboro; Sally Hensel, Mayor; and Gerald Vicha, Fire Chief, in this Title VII action alleging that plaintiff was subjected to a hostile work environment, sexual harassment, and retaliation.
 
 I.
 
 2
 In October 1991, plaintiff began her employment with the city of Streetsboro as a part-time fire fighter-emergency medical technician. In July 1992, she alleges that a series of harassing events began to occur. These events included being accused of having an affair with another fire fighter, receiving letters of a threatening nature, receiving a dead rat in her home mailbox, receiving numerous hang-up telephone calls at both her home and the fire station, having water placed in her fire boots, having her name whited out of the department sign-up book, having her name tag torn off her departmental mailbox, having eggs put in her fire boots, having her name blackened out on a department log sheet, having her portable radio taken without her consent and returned two days later with the words "ha, ha" written on it, having eggs placed in her fire gloves, and having her department uniform shirt, badge, and fire gloves taken. The person or persons who committed these actions is still unknown.
 
 
 3
 Fire Chief, Gerald Vicha, became aware of these harassing events about the third or fourth week of September 1992 when he was told by another fire fighter, Dave Fronek, that he received a threatening note in his mailbox. Chief Vicha learned plaintiff had also received a threatening note and of other events. The fire chief took various remedial actions; however, the perpetrator of the events was not found. Although the fire department was loaned a surveillance camera and purchased a camcorder with a telephoto lens, neither of these was used to try to catch the alleged perpetrator.
 
 
 4
 In late March 1993, Fire Chief Vicha drove plaintiff to the hospital after he learned that she was suffering from abuse of alcohol and drugs. Thereafter, he decided to place plaintiff on administrative leave because he was concerned that she would not be able to perform her duties, which would not only present a danger to herself, but also to other fire fighters and the public as well. Plaintiff was placed on administrative leave and told she could return to work if she provided a doctor's statement relating to her fitness and underwent a physical examination. Plaintiff was also asked to undertake a polygraph test in order to determine the origin of the harassing events. The fire department felt that it was necessary to clarify that the crimes or acts that she had alleged, in fact, had taken place. Various other fire fighters were also subjected to polygraph tests.
 
 
 5
 Plaintiff submitted a letter from her doctor stating she could return to work, but defendants initially would not accept it because it was not written on stationery with the doctor's letterhead. Once she submitted an official letter, she returned to work. When the investigation into these alleged events was finished, nothing had been ascertained other than that Fronek admitted that he had written the threatening letter to himself. He was ultimately fired.
 
 
 6
 Plaintiff finally agreed to undertake a polygraph test, and she failed portions of this test. When the polygraph examiner asked her whether she knew who committed any of the acts, she answered "no." The polygraph examiner concluded that this response showed deception. He also concluded that her response showed deception when she answered "no" when asked whether she had committed any of the acts herself. Finally, he concluded that she was being deceptive in her response to whether she was telling the entire truth regarding the case in question and answered "yes." Fire Chief Vicha indicated that he suspected plaintiff might be doing the acts of harassment to herself.
 
 
 7
 There was also evidence that plaintiff refused to cooperate in the investigation. During the investigation, she was asked to report her complaints to the Streetsboro Police Department, but after an initial meeting with an officer, she indicated that she did not wish to continue to do so. Also, she initially refused to take the polygraph examination. Finally, she contended she was threatened by a non-officer of the Streetsboro Fire Department in December 1993, but indicated she would not reveal his identity even if ordered to do so by the court.
 
 
 8
 On March 28, 1994, plaintiff filed a complaint in the United States District Court for the Northern District of Ohio. The complaint alleged violations of § 703(a)(1) and § 704(a) of Title VII of the Civil Rights Act of 1964. The complaint alleged that defendants had unlawfully discriminated against plaintiff in her employment (1) by failing, upon receiving notice of these alleged harassing incidents, to take prompt and appropriate action to eliminate the harassment of plaintiff because of her sex, and (2) by placing plaintiff on administrative leave, requiring her to take a polygraph and other tests, and delaying her return to active duty in retaliation for her opposition to sexual harassment.
 
 
 9
 On May 22, 1995, the district court issued a judgment granting summary judgment to defendants on all claims in the case. Plaintiff filed a motion to alter or amend the judgment. On July 5, 1995, the district court issued an order denying this motion. On August 3, 1995, plaintiff filed a timely appeal.
 
 II.
 
 10
 This appeal involves the issue regarding the extent of an employer's obligation under Title VII of the Civil Rights Act of 1964 upon receiving notice of a female employee that she is being harassed because of her sex.
 
 
 11
 Before the district court, defendants had argued that plaintiff did not state a prima facie case of hostile environment sexual harassment because the actions directed at plaintiff were not sexual in nature. The district court found that argument to be without merit. The district court found that the statute prohibits discrimination because of one's sex. The district court stated the following in this regard:
 
 
 12
 It appears that, at the relevant time, Ward was the only female in the traditionally male role of fire fighter. It is entirely conceivable that she was subjected to all of these actions for the simple reason that she was a female and the other fire fighters wanted to put pressure on her, drive her out, or make her the butt of unpleasant jokes and incidents solely for their own enjoyment. There was no evidence that any other fire fighter was subjected to this type of harassing behavior.
 
 
 13
 Presuming for the sake of this motion that the plaintiff can establish her prima facie case of sexual harassment, the defendants would be liable on a theory of respondeat superior only if they knew or should have known of the harassment and failed to take action.
 
 
 14
 There appears to be no dispute that the defendants were placed on notice that plaintiff was being subjected to the various incidents of which she complains. Nobody even disputes whether the various incidents occurred. Everyone agrees, however, including the plaintiff, that the person or persons responsible for the incidents were, and still are, completely unknown.
 
 
 15
 The district court presumed for the sake of the motion that plaintiff did state a prima facie case under Title VII, which makes it unlawful for an employer to discriminate against an individual because of the individual's gender. 42 U.S.C. § 2000e-2(a)(1). Plaintiff was alleging sexual discrimination under the hostile environment theory in which an employee is subject to unwelcome sexual harassment because of her gender, and that harassment has effected a term, condition or privilege of employment.
 
 
 16
 Since the presumption by the district court that the alleged events constituted harassment because of her sex is not contested by defendants on appeal, the only issue before this court is whether there is evidence which would support a finding that defendants failed to take prompt and appropriate action to eliminate the alleged harassment after being placed on notice of the conduct. When an employer is placed on notice of harassing conduct directed at an employee because of sex, the employer is obligated to take prompt and appropriate action reasonably calculated to put a halt to this conduct. Kauffman v. Allied Signal, Inc., 970 F.2d 178, 183 (6th Cir.), cert. denied, 506 U.S. 1041 (1992).
 
 
 17
 On a motion for summary judgment, summary judgment is appropriate where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Once the moving party satisfies his or her burden to show an absence of evidence to support the non-moving party's case, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party in opposition "may not rest upon mere allegations or denials of this pleading, but ... must set forth specific facts showing there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
 
 
 18
 In the present case, plaintiff contends that the district court erred in granting summary judgment to defendants because there is evidence which would support a finding that defendants did not act in compliance with their legal obligation regarding harassing conduct directed toward plaintiff. Plaintiff contends that the most important evidence is that the actions defendants took were ineffective, and that the conduct continued unabated for approximately seven to eight months. She argues that defendants conceded that they were unable to determine the perpetrators of any of the conduct, and that no individuals were disciplined for the conduct. Plaintiff argues that defendants' initial reaction when learning of the conduct was not to take it seriously and to delay in attempting to put a halt to it. Plaintiff also argues that the efforts which were taken were clearly ineffective in stopping the harassment, and that defendants were obligated to take reasonable additional steps to put a halt to the harassing conduct, rather than merely continuing to rely solely upon the current ineffective measures. Plaintiff alleges that defendants' measures which were limited to issuing a harassment policy, calling meetings of the fire department employees to tell them harassing conduct would not be tolerated, informal questioning of fire fighter employees regarding specific incidents, and daily checks for a few minutes by a fire fighter, usually only outside the fire station, in the evenings when employees were not generally there, were insufficient. Plaintiff alleges that defendants should have used surveillance cameras or camcorders as measures reasonably calculated to deter the harassing conduct, but failed to do so.
 
 
 19
 We do not agree with plaintiff's argument. The evidence indicates that numerous actions were taken by defendants to stop the conduct of which plaintiff complained and to determine who the perpetrators were. These efforts included: (1) a phone tap that was placed under the direction of Ohio Bell Security; (2) meeting with the staff of the fire department to make sure that members of the department understood that harassing conduct would not be tolerated; (3) appointing an Internal Affairs officer to try and determine who was behind the alleged conduct; (4) conducting an initial police investigation in October of 1992 by Sergeant John Taiclet; (5) allowing an exception for plaintiff to take her fire gear home to avoid water and eggs in her fire gear; (6) the initiation of a full police investigation by Sergeant Stankiewicz of the Streetsboro Police Department; (7) firing an employee who admitted writing a harassing note to himself; and (8) taking certain actions during the course of the police investigation, which included professional handwriting analyses by Dr. Phillip Bouffard of the Lake County Crime Lab, conducting polygraph examinations of certain fire department employees, conducting police interviews of fire department employees, taking written witness statements of fire department employees, and taking fingerprints of fire department employees.
 
 
 20
 After reviewing these actions, the district court concluded the following:
 
 
 21
 In general, plaintiff complains that these steps were inadequate and ineffective to stop the harassment. She asserts that a surveillance camera should have been used because it would have stopped the harassment. Apparently another fire fighter, a friend of the plaintiff, arranged for a surveillance camera to be loaned to the fire department. However, Chief Vicha testified at his deposition that, although the camera was received, it was never used because there was no place in the building to conceal it while it could be focused on the plaintiff's equipment. It was his judgment that the perpetrator(s) would not act while a camera was in full view and that installing a visible camera would only delay, not stop the harassment. He testified that the camera could not be permanently installed, so as to permanently stop the harassment, because it was borrowed equipment. A discussion was had regarding the possibility of purchasing a surveillance camera, but it was concluded that there were no funds in the budget for such purchase. Vicha, therefore, made the judgment call that a temporary surveillance camera would not be permanently effective and would not assist in locating the perpetrator(s).
 
 
 22
 Although this Court accepts the fact that an employer will be held liable for failure to take prompt and adequate remedial action where there is a known perpetrator, the Court does not believe that an employer is expected to do more than this employer tried to do to ascertain the identity of the perpetrator or perpetrators. The employer cannot be a mind-reader and the employer cannot stop something whose source is unknown. Therefore, the Court finds no basis for asserting respondeat superior liability under these facts.
 
 
 23
 We agree with the district court's analysis. Plaintiff has made much of defendants' alleged lack of adequate remedial action and complains that new and effective techniques and strategies were not used. However, as the district court noted, Chief Vicha made a judgment call that a temporary surveillance camera would not be permanently effective in eliminating harassment or in assisting to identify the perpetrator. We believe that this was a reasonable judgment and that the fire department was not required to install, at its own expense, a hidden camera in order to ascertain the identity of the alleged perpetrators.
 
 
 24
 In regard to the camcorder, which plaintiff also alleges should have been installed, Chief Vicha testified that he purchased it in December 1992, and that it was not used for a number of reasons. Using the camcorder to watch the parking lot entrances would have meant installing it on a vacant storefront building across the street. In discussing the issue with the police department, he decided instead to put police officers on special alert in paying attention to the parking lot. The camcorder was also needed for teaching and training purposes and installing the camcorder inside the area where plaintiff kept her gear would have made it open and obvious to the perpetrator as was the case with the surveillance camera. Finally, using the camcorder would have required constant insertion of tapes every two to four hours. Given these reservations, we do not believe that the fire department failed in its duty to take remedial action by failing to use the camcorder in order to try to catch the perpetrator of the alleged acts of sexual harassment.
 
 
 25
 Finally, there was evidence that plaintiff failed to cooperate in the investigation which the fire department initiated. After interviewing plaintiff, Chief Vicha had met with Chief Brown of the Streetsboro Police Department to discuss the matter and got a Streetsboro Police Detective, Sergeant Taiclet, involved. Chief Vicha instructed plaintiff to take any information she had about any incidents to the sergeant. Although she met with Sergeant Taiclet once, plaintiff indicated she did not want to pursue her complaint with the police even though Sergeant Taiclet remained ready to continue the investigation even on a non-criminal basis. Plaintiff also frustrated the efforts of defendants to take prompt remedial action by refusing to report the harassing incidents immediately. In one incident, she indicated that she knew a person who had threatened her, but she refused to tell the fire department who it was.
 
 
 26
 In light of these facts, we believe there is ample evidence to support the district court's ruling that prompt and adequate remedial action was taken and that defendants took more than reasonable measures to stop the harassment of which plaintiff complained. Ample efforts were taken by defendants to ascertain the identity of the perpetrator, but they did not produce a suspect, and therefore there was no one for defendants to discipline. All that defendants could do was to make a good faith effort to take prompt and adequate remedial action to produce the identity of the perpetrator and take disciplinary action. We believe the district court properly concluded that an employer could not be expected to do more than these defendants did in their numerous efforts to ascertain the identity of the perpetrator and to halt the harassing conduct. Therefore, the district court is affirmed on this issue.
 
 III.
 
 27
 Plaintiff also asserts that because she complained about being harassed and because she refused to submit to a polygraph test as part of the police investigation, she was retaliated against by being placed on administrative leave.
 
 
 28
 Title VII prohibits discrimination against an employee because she has opposed any practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). In order to establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) she engaged in protected activity under Title VII; (2) she suffered an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action. Steiner v. Showboat Operating Co., 25 F.3d 1459, 1464 (9th Cir.1994), cert. denied, 115 S.Ct. 733 (1995).
 
 
 29
 In the present case, the district court found that plaintiff did not establish a prima facie case based on the following reasoning:
 
 
 30
 There is no evidence that the administrative leave was retaliatory. There is no evidence that the requirement of a polygraph test was anything more than an attempt to get to the bottom of the alleged harassment. Other fire fighters were subjected to polygraphs in addition to the plaintiff. However, plaintiff refused to cooperate with the investigation. Chief Vicha stated that, when investigations turned up no leads, he began to suspect that the plaintiff was doing all these things to herself for some unknown reason.
 
 
 31
 The Court concludes that the plaintiff has failed to establish a prima facie case of retaliation. Thus defendants are entitled to summary judgment on that portion of the plaintiff's complaint.
 
 
 32
 We agree with the district court that the record in this case lacks any evidence indicating there was any retaliatory conduct against plaintiff for opposing harassing conduct based upon her sex. The alleged retaliatory administrative leave was the result of plaintiff's alcohol and drug abuse to which she admits. Chief Vicha indicated that he became aware of this on March 27, 1993, when he had to take her to the hospital. Plaintiff alleges that she only had to spend one night in the hospital for her drug and alcohol abuse. However, it is clear that the basis for the administrative leave was plaintiff's own admitted chemical dependency and the duty of the City of Streetsboro to preclude fire fighters and emergency medical technicians who are chemically dependent from being placed in potentially life-threatening and stressful situations. We agree with defendants that plaintiff's argument that she should not have been placed on administrative leave after only one visit to the hospital ignores the reasonable and common-sense conclusion that defendants not only had a duty to plaintiff and other department employees, but also to the public as well in keeping a chemically dependent fire fighter off the street.
 
 
 33
 Furthermore, there is no evidence that this administrative leave was a pretext for retaliation. Mere conclusory statements made by plaintiff that she was the victim of retaliatory conduct are insufficient in themselves to overcome a motion for summary judgment. See Miller v. Solem, 728 F.2d 1020, 1026 (8th Cir.), cert. denied, 469 U.S. 841 (1984). There is no evidence to suggest that plaintiff was required to take the polygraph examination for any other reason than to assist defendants in ascertaining the origin of the alleged harassment. There is no connection made between the polygraph examination and the administrative leave in the letters of the City Law Director to plaintiff's attorney, nor to plaintiff herself. Chief Vicha testified quite clearly that the polygraph exam had nothing to do with plaintiff's administrative leave. Plaintiff also claims that there was a delay in her returning to work because the first letter she submitted from her doctor was not accepted. We do not believe it was unreasonable for the fire department to require a letter on stationery with the doctor's letterhead, indicating that plaintiff was ready to return to work.
 
 
 34
 It is evident from the record that defendants had a duty to place plaintiff on administrative leave after her own admitted abuse of alcohol and drugs given the fact that she had a stressful and hazardous job. In good conscience, defendants could not place on the streets of their city a fire fighter-emergency medical technician who was not able to perform her job responsibilities in potentially life and death circumstances. It was reasonable to require plaintiff to undergo a physical examination and to require her to supply an official letter from her treating psychiatrist that she was able to perform her duties.
 
 
 35
 Finally, there is evidence that plaintiff worked to frustrate the ability of defendants to take prompt and adequate remedial action by refusing to pursue her complaint with Sergeant Taiclet of the Streetsboro Police Department, refusing to submit to a polygraph examination, and refusing to report the harassing conduct as it occurred. Contrary to plaintiff's contention, the evidence indicates that defendants were not retaliating against plaintiff in placing her on administrative leave, but continued during that time to try to get to the bottom of this alleged sexual harassment. For all these reasons, the district court is affirmed on this issue.
 
 
 36
 To conclude, the district court is hereby AFFIRMED.