357 F.Supp.2d 1180 (2005)
Patricia SHEPPARD, individually and as personal representative of the James Edward Sheppard Estate, Plaintiff,
v.
UNION PACIFIC RAILROAD CO., Defendant.
No. 4:03CV1340DDN.
United States District Court, E.D. Missouri, Eastern Division.
January 20, 2005.
*1182 Michael P. Bastian, St. Louis, MO, for Plaintiff.
Heath H. Hooks, Thomas E. Jones, Thompson Coburn, Belleville, IL, for Defendant.

MEMORANDUM AND ORDER
NOCE, United States Magistrate Judge.
This matter is before the court upon the motion of defendant Union Pacific Railroad Co. (Union Pacific) for summary judgment. (Doc. 19.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). A hearing was held on November 10, 2004.

I. BACKGROUND
Plaintiff commenced this action in the Circuit Court for the City of St. Louis. Defendant removed the action to this court on the basis of diversity of citizenship and the amount in controversy. In her state court petition seeking damages for wrongful death, plaintiff Patricia Sheppard alleges the following. On August 18, 2000, plaintiffs husband was driving a semi tractor-trailer in a westerly direction on Goldsmith Road in Green County, Arkansas, when he collided with a Union Pacific train operated by Union Pacific employees. Plaintiff alleges her husband died of injuries proximately caused by the negligence of the defendant and its agents, servants, and employees, singularly and in combination. Specifically, plaintiff alleges that defendant or its agents
a. failed to maintain the right of way to be free of obstruction in violation of Arkansas state law 23-12-20(a)(1) and federal regulation;
b. failed to maintain the right of way in violation of Arkansas state law XX-XX-XXX(2) despite a recent fatal collision at the same crossing;
c. issued speed orders to its employees which prohibited the avoidance of the collision;
d. accelerated the train locomotive until impact;
e. failed to stop or slow the train locomotive when a collision was imminent;
f. failed to keep a proper lookout;
g. failed to sound a horn, whistle, bell or flash lights, in a timely manner;
h. failed to exercise the highest degree of care under the circumstances;
i. failed to provide the operators of the train locomotive with a reasonably safe place to work, directly causing them to be inattentive and distracted;
j. failed to provide proper lighting and signaling and whistling devices to enable its operators to warn or see an approaching vehicle;
k. failed to properly maintain their grade crossing;
l. failed to provide adequate crossing protection devices;
m. failed to provide barriers and/or passive restraints at the grade crossing;
n. failed to instruct its train crew employees concerning safe operating practices over said crossing;
o. failed to conduct an evaluation of its crossing for the purpose of determining whether or not the crossing *1183 needed protection devices such as automatic flashers and/or gates;
p. failed to install automatic flashers and/or gates at said crossing;
q. failed to order a speed reduction of its trains at said crossing, even though it knew of other accidents and a recent fatal accident at said crossing;
r. required its operators to perform job duties and work with vibrating machinery/tools/ equipment;
s. failed to comply with government regulations;
t. failed to treat or remove the operator of the locomotive who suffered from cumulative trauma to the upper extremities including carpal tunnel syndrome and who was medically unfit to operate the locomotive; and
u. failed to provide the operator of the locomotive with equipment and provided the operator with equipment which defendant knew or should have known would cause carpal tunnel syndrome or other cumulative trauma injuries which caused him to be a dangerous operator of the locomotive.
(Doc. 1, Ex. A at 2-3.)
Plaintiff, individually and as the personal representative for the estate of James Edward Sheppard, her husband, seeks wrongful death damages in excess of $25,000 and punitive damages in the amount of $2,000,000. (Id. at 4.)
Defendant Union Pacific has moved for summary judgment on a number of grounds. Defendant maintains that plaintiffs allegations regarding the training of crew members or inadequate equipment, inadequacy of warning devices, or excessive train speed are all pre-empted by the Federal Railroad Safety Act (FRSA). Defendant also argues that undisputed evidence establishes that there were no problems with the train's whistle or lights on August 18, 2000, and that there is no evidence that defendant failed to properly maintain the grade crossing. Defendant argues that on those grounds, there are no genuine issues of material fact, and that they are entitled to judgment as a matter of law.

II. DISCUSSION
Summary judgment must be granted if the pleadings and showing of evidence demonstrate that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Initially, the moving party must demonstrate the absence of an issue for trial. Celotex, 477 U.S. at 323, 106 S.Ct. 2548. Once a motion is properly made and supported, the nonmoving party may not rest upon the allegations in its pleadings but must instead set forth specific facts showing that a genuine issue of materia] fact exists. Fed.R.Civ.P. 56(e); Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir.2003). The nonmoving party also "must ... provide evidence of `specific facts creating a triable controversy.'" Howard v. Columbia Pub. Sch. Dist, 363 F.3d 797, 800 (8th Cir.2004) (quoting Jaurequi v. Carter Mfg. Co., 173 F.3d 1076, 1085 (8th Cir.1999)).

Whether plaintiff has affirmative evidence supporting the claim of failure to provide proper lighting, signaling, and whistling devices
Regarding plaintiffs claims g and j, above, defendant argues that engineer Charles Payne has testified in a deposition that there were no problems with the whistle the day of the accident (Doc. 20, Ex. A at 54; Ex. B at 294), that he sounded the whistle properly (Id., Ex. A at 72; *1184 Ex. B at 290, 351-53), and that the train had working ditch lights and a headlight (Id., Ex. A at 55). (Doc. 20 at 6.) Based on this evidence, defendant claims summary judgment should be granted as to lighting, whistling, or signaling.
In her response, plaintiff argues that Mr. Payne made a variety of allegations against defendant in a separate proceeding regarding this accident, including an allegation that defendant failed "to provide proper lighting and signaling and whistling device to enable its occupants to warn or see an approaching vehicle." (Doc. 24 at 9-10, citing Ex. 7 at unnumbered 4.) In her response to defendant's statement of uncontroverted material facts, plaintiff admits that Mr. Payne testified in depositions as defendant states he did and that the train was equipped with a whistle. (Doc. 24 at unnumbered 18-19, paras. 5, 6, 11.) As to defendant's assertion that "[t]he locomotive was equipped with two sets of ditch lights and a head light that were working properly" (Doc. 20, Ex. J at 2, para. 13), plaintiff merely denies without presenting any evidence that they were not working at the time of the crash. Plaintiff denies defendant's assertion that "[t]here were no problems with the whistle on August 18, 2000" (Id. at 2, para. 12) and that Mr. Payne blew the whistle properly from the whistle post up to the crossing (Id. at 2, para. 19), offering the affidavit of Kristi Johnson. (Doc. 24, Ex. 8.)
In the relied upon affidavit, Kristi Johnson states that she crossed the grade crossing at Goldsmith Road on August 18, 2000, approximately 60-90 seconds before the collision, passed the decedent traveling in the opposite direction, and then heard the collision, but not the horn. (Doc. 27, Ex. 15.) It is fair to say that this is the entirety of the plaintiffs evidence regarding the issue of whether or not the whistle or horn of the train were audible. Arkansas law holds "that testimony of persons with good hearing who are in a position to hear a bell ringing or whistle blowing, that no such signal was heard, is positive rather than negative evidence." S. Lumber Co. v. Thompson, 133 F.Supp. 92, 97 (W.D.Ark. 1955). Defendant contends that Kristi Johnson was not in a position to hear the whistle when the collision occurred. (Doc. 25 at 6.)
On the facts as stated in the response to the motion to dismiss, the testimony of Kristi Johnson, as described in her affidavit, would be inadmissible. Brown v. Trans World Airlines, 746 F.2d 1354, 1358 (8th Cir.1984) (evidence presented along with a motion for summary judgment, or in response to such a motion, must be of a sort to be admissible at trial). There has been no foundation laid, beyond Ms. Johnson's conclusory assertion, that she was, some 60-90 seconds after passing the crossing, in a "position to hear a bell ringing or whistle blowing." Without such foundation evidence, Ms. Johnson's affidavit is legally insufficient to create a genuine issue of fact on whether the whistle blew. Summary judgment is warranted as to the lighting, signaling, and whistle blowing claims.

Whether plaintiff has affirmative evidence to support a claim of failure to maintain the grade crossing
On plaintiffs claims a, b, and k, defendant argues that there has been no proffer of admissible evidence to create a genuine issue of fact, citing Mr. Payne's testimony in deposition that his view was not obstructed in any way. (Doc. 20 at 7.) Plaintiff responds first by citing the relied upon Arkansas statute, XX-XX-XXX, which prescribes a duty to railroads to maintain a right of way at a crossing free of obstructions to the view "of pedestrians and vehicle operators using the public highways," without reference to the view of *1185 train personnel. (Doc. 24 at unnumbered z.) The logical extension of Mr. Payne's testimony is that, if he had a clear line of vision to the crossing, so a vehicle operator, looking from where Mr. Payne could see, would be able to see the train.
Defendant also argues that plaintiff does not present legally sufficient evidence regarding any obstruction. Plaintiff presents two affidavits of Wayford and Sarah Pence that the vegetation cutbacks at the right of way were not in compliance with the Arkansas statute. Sarah Pence testifies in her affidavit, "I measured ... to see if the railroad has complied with the Arkansas statute that requires vegetation to be cleared 100 yards down the tracks and 50 feet on either side .... the right-of-way is not cleared the required distance." (Doc. 24, Ex. 10.) Wayford Pence testifies in the same words. (Doc. 24, Ex. 9.) But the statute actually says that the cutback
shall be for a distance of fifty feet (50) on each side of the centerline between the rails for the maintenance width and for a distance of one hundred yards (100 yds) on each side of the centerline from the public road or highway for the maintenance length.
(Doc. 24 at unnumbered 11 (citing Ark. Code Ann. 23-12-201).) There is a substantial difference between a mandated distance of fifty feet from the centerline of the rails, and the greater distance measured fifty feet out from the rails themselves. It is possible for the affidavits to be accurate in setting out the dimensions of the cutbacks, and still not create a genuine issue of material fact under the Arkansas statute.
Defendant argues there are other problems with the affidavits. First, defendant argues that the affiants, Sarah and Wayford Pence, are the daughter and son-inlaw of the decedent. The issue of bias, suggested by this argument, is at this juncture irrelevant because the weighing of credibility of potential witnesses is a matter for trial, not for summary judgment. Oldham v. West, 47 F.3d 985, 988-89 (8th Cir.1995).
The critical weakness of the affidavits is that they are not probative of the conditions at the time of the collision. As defendant states,
the affidavits do not even state on what date the affiants measured the right of way. In addition, the affidavits do not even state what the actual measurements were. The conditions at the crossing, including the vegetative growth in the area, could have been completely different on the date of the measurements than they were on the date of the accident.
(Doc. 25 at 8.) Without these details establishing the procedure for the measurements or the conditions and dimensions of the cutbacks, the affidavits are merely "conclusive assertions of ultimate fact ... entitled to little weight when determining whether a nonmovant has shown a genuine issue of fact sufficient to overcome a summary judgment motion supported by complying affidavits." Miller v. Solem, 728 F.2d 1020, 1023-24 (8th Cir.1984). Summary judgment is warranted as to the failure to maintain the grade crossing claims.

Whether plaintiffs excessive speed allegations are preempted
Regarding plaintiffs claims c, d, e, and q, defendant argues that any and all excessive speed claims are federally preempted by the FRSA. Defendant further asserts that the undisputed evidence was that the train was traveling at approximately 46 miles per hour, well within the mandated maximum speed of 60 for that track. Because it is undisputed that the train was traveling within the federal speed limits at the time of the collision, *1186 defendant argues that FRSA preempts the speed-related claims.
Plaintiff argues that federal preemption should not be entertained for two reasons. First, plaintiff asserts that there was insufficient federal involvement in the grade crossing at Goldsmith Road. This argument confuses federal preemption as to speed regulation, which occurs merely upon the promulgation of the regulation, and federal preemption as to crossing devices, which is dependent on federal involvement and is discussed infra.
When it examined the speed regulation preemption in CSX Transp. v. Easterwood, the Supreme Court did not rely on federal involvement. Rather, the Court simply stated that, where there is a federal regulation as to speed, state and common law speed rules are displaced.
On their face, the provisions of § 213.9(a) address only the maximum speeds at which trains are permitted to travel given the nature of the track on which they operate. Nevertheless, related safety regulations adopted by the Secretary reveal that the limits were adopted only after the hazards posed by track conditions were taken into account. Understood in the context of the overall structure of the regulations, the speed limits must be read as not only establishing a ceiling, but also precluding additional state regulation of the sort that respondent seeks to impose on petitioner.
CSX Transp. v. Easterwood, 507 U.S. 658, 674, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). If the train was traveling within the federal speed limit for that grade of track at the time of collision, any state or common law claim as to excessive or unreasonable speed would not stand.
This raises the second point of plaintiffs objection to federal speed preemption in this case, that Mr. Payne's testimony in deposition was not sufficiently precise regarding the speed limit. In its memorandum and statement of uncontroverted material facts, defendant cites the following testimony of Mr. Payne:
Q. And you said the speed limit on the track was 
A. Sixty.
Q. Again, that's set by the federal FRA regulations?
A. Yes.
(Doc. 20, Ex. B at 288.) In her response to defendant's statement of controverted material facts, the plaintiff merely states, "[d]eny .... On Exh b, page 288 he states a speed limit of `sixty' on the track without indicating where along the track." (Doc. 24 at unnumbered 19.) This is not sufficient to rebut the defendant's argument regarding the federal speed limit. Plaintiff does not cite any federal regulations or manuals, or present contradicting testimony. Plaintiff fails to "set forth specific facts that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Neither does plaintiff satisfy Local Rule 7-1.01(E), that "[a]ll matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." It is undisputed then, that the speed limit for the grade of track at the Goldsmith crossing was 60 miles per hour, and that as a matter of law under Easterwood, if the defendant's train was traveling within that limit, summary judgment should be granted for the defendant on all speed related claims.
The next question is whether the proffered evidence indicates that the train was traveling 60 miles per hour or less. Plaintiff submits two charts, which purport to display the speed of the train. One is a graphical representation of the train's speed. (Doc. 24, Ex. 4 at 10, 12, 13.) The other is a numerical chart. (Id. at z) Plaintiff characterizes the graphical representation *1187 as showing the "speed in excess of 60 mph and constantly increasing," with the numerical chart showing speed of "58 mph and increasing." (Doc. 24 at unnumbered 3.) Defendant argues in response that the train was traveling at roughly 47 miles per hour, with the readings on the numerical chart of 56 or 58 being erroneous. (Doc. 25 at 5.) Even if correct, defendant argues that 58 miles per hour is "still well within the 60 miles per hour federally mandated speed limit." (Id. at 9.) Defendant does not address the characterization of the graph by the plaintiff as showing train speeds in excess of 60 miles per hour at the time of the crash. The question of the train's actual speed at the time of the collision appears to be a genuine issue of material fact, necessary to be decided at trial in order to determine if federal speed preemption would apply.
Additionally, subparagraph 4(q) of the plaintiffs complaint alleges that the defendant "[f]ailed to order a speed reduction of its trains at said crossing, even though it knew of other accidents and a recent fatal accident at said crossing." (Doc. 1, Ex. A at 2,3.) In support of this allegation, plaintiff has attached a number of accident-incident reports to her response to defendant's motion for summary judgment. These reports, however, are inadmissible:
§ 409 withdraws the broad latitude of discretion ordinarily allowed judges in evidentiary matters and bars the reception of evidence as it states that the `reports, surveys, schedules, lists, or data' within the statute "shall not be admitted into evidence in Federal or State court or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data."
Harrison v. Burlington N. R.R. Co., 965 F.2d 155,159 (7th Cir.1992).
Summary judgment is warranted on plaintiffs claim q, for failure to present admissible affirmative evidence in support of this claim. However, summary judgment as to the remainder of the speed related claims is denied.

Whether plaintiff's inadequate crossing devices claim is preempted
Regarding plaintiffs claims i, m, o, and p, defendant argues that these claims of inadequate crossing protection and warnings are federally preempted under FRSA. Defendant asserts that, because the Goldsmith Street Crossing was the subject of a federally funded project, the question of the adequacy of warning devices is federally preempted in this case. To establish that the crossing was part of such a project, defendant offers a number of exhibits.
Plaintiff argues that defendant has the burden to show the crossing devices in question comply with the regulations or that a diagnostic team must have evaluated the particular crossing to determine that automatic gates are not appropriate. Defendant notes that the line of cases on which plaintiff relies have been effectively overruled by the Supreme Court in Norfolk v. Shanklin. Shanklin held that federal funding and not a particularized examination of the crossing determines preemption:
As a result, the FRSA pre-empts respondent's state tort claim that the advance warning signs and reflectorized crossbucks installed ... were inadequate. Because TDOT used federal funds for this signs' installation, [FRSA] governed the selection and installation of the devices.....Once the FWHA approved the project and the signs were installed using federal funds, the federal standard for adequacy displaced Tennessee statutory and common law addressing *1188 the same subject, thereby pre-empting respondent's claim.
Norfolk v. Shanklin, 529 U.S. 344, 358-59, 120 S.Ct. 1467,146 L.Ed.2d 374 (2000); see also Bock v. St. Louis Southwestern Ry. Co., 181 F.3d 920, 922 (8th Cir.1999) ("Since Easterwood, our court has been quite clear that if federal funds have been expended for warning devices at a grade crossing, state tort claims alleging negligence in the maintenance of the crossing are preempted."); St. Louis Southwestern Ry. Co. v. Malone Freight Lines, 39 F.3d 864, 866 (8th Cir.1994) ("To decide whether the ... claims are preempted under Easterwood, we must decide whether federal funds participated in the installation of a warning device.").
Plaintiff, when confronted with these affidavits and other documents purporting to demonstrate that the crossbucks installed at Goldsmith Street were part of a federally funded program, may not simply deny this fact and rest. Rather, Fed.R.Civ.P. 56(e) requires that the nonmoving party, in this case the plaintiff, "set forth specific facts showing that there is a genuine issue for trial." Plaintiffs legal arguments against preemption fail to do this, and plaintiff refrains from making any substantive factual argument. For these reasons, summary judgment as to inadequate crossing device claims is warranted.

Whether failure to train allegations are preempted
Last, defendant argues that plaintiffs claim n, failure to train, allegations are preempted by FRSA and controlling federal regulations, 49 CFR § 240.1. In response, plaintiff cites Mr. Payne's petition in his claim against defendant in other litigation, that "their failure to train him was the proximate cause of his injuries sustained in the collision." (Doc. 24 at unnumbered 15.) As stated by the court in Miller,
a party opposing a motion for summary judgment is not without obligations. Rule 56(e) states that "when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest on mere allegations or denial of his pleadings, but his response, by affidavit or otherwise provided in this rule, must set forth specific facts that there is a genuine issue for trial."
Miller, 728 F.2d at 1023-24. If the party opposing a motion for summary judgment is not allowed to rely merely upon its own allegations or pleadings, then neither may she simply restate another party's mere allegations from other litigation. Plaintiff fails to proffer admissible evidence of specific facts through affidavit or otherwise which would support a claim of failure to train.
Furthermore, plaintiff repeatedly addresses Mr. Payne's allegations and testimony throughout her response, often noting that his credibility is in question, and particularly that Mr. Payne's testimony that defendant relies on in moving for summary judgment was made in a case to which the plaintiff was not a party:
The Defendant relies so heavily on the testimony of [Mr. Payne] that it overlooked all the conflicting things he said which implicate his negligence and the negligence of [defendant]. Genuine issues of material fact exist. The Defendant's motion rests on [Mr. Payne's] credibility and therefore, for that additional reason, this is a case for the jury.
(Doc. 24 at unnumbered 16.) As the Eighth Circuit wrote in Lundeen v. Cordner, "[t]he real gravamen of plaintiffs objection is not that there is conflicting evidence but rather that the summary judgment rests upon" the testimony of one witness, here, largely Mr. Payne. Lundeen v. Cordner, 354 F.2d *1189 401, 408 (8th Cir.1966) His testimony being so important, "it is asserted that the case should proceed to trial in order that the demeanor of the witness could be observed and his testimony subjected to the test of cross-examination." Id. The court noted in that case that a party opposing a motion for summary judgment cannot force a trial "merely in order to cross-examine" such a witness, "nor must the Court deny the motion for summary judgment on the basis of a vague supposition that something might turn up at the trial." Id.
Finally, while plaintiff cites Mr. Payne's allegations and argues as a matter of fact the issue of whether or not he was trained properly, she never addresses the legal issue of whether these "failure to train" allegations were, as defendant contends, preempted by FRSA. Once again, Local Rule 7-4.01(E) states that "[a]ll matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." In this instance, the federal preemption of failure to train claims is undisputed. The undisputed preemption of failure to train allegations, as well as the lack of positive evidence offered by the plaintiff beyond the pleadings of another litigant, warrants summary judgment as to the failure to train claims.
For these reasons,
IT IS HEREBY ORDERED that the motion of defendant for summary judgment (Doc. 19) is sustained as to plaintiffs claims g and j, regarding lighting, signaling, and whistling devices; claims a, b, k, regarding maintenance of the grade crossing; claim q, regarding speed reduction due to knowledge of previous accidents; claims 1, m, o, and p, regarding the inadequacy of crossing devices; and claiming on the failure to train.
IT IS FURTHER ORDERED that the motion for summary judgment is denied as to claims c, d, e, regarding the speed of the train, because there remains a genuine issue of material fact as to whether or not the train was traveling within the federally mandated speed limit. These claims remain for trial, along with claims h, i, r, s, t, and u.